RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0208P (6th Cir.)
File Name: 01a0208p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

No. 00-1601

TRACEY ALLEN CAMPBELL,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 99-90009—George C. Steeh, District Judge.

Argued: March 6, 2001

Decided and Filed: May 14, 2001[*]

Before: KRUPANSKY, BOGGS, and BATCHELDER,
Circuit Judges.

_____

## COUNSEL

**ARGUED:** Jonathan M. Epstein, FEDERAL PUBLIC
DEFENDERS OFFICE, Detroit, Michigan, for Appellant.

---

[*]This decision was originally issued as an "unpublished decision"
filed on May 14, 2001. On May 31, 2001, the court designated the
opinion as one recommended for full-text publication.

1

Jennifer J. Peregord, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Jonathan M. Epstein, FEDERAL PUBLIC DEFENDERS OFFICE, Detroit, Michigan, for Appellant. Jennifer J. Peregord, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

————————

### OPINION

————————

BOGGS, Circuit Judge. Tracey Allen Campbell appeals his conviction on a plea of guilty to possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Campbell pleaded guilty after his motion to suppress certain evidence and his motion to dismiss were denied. He now challenges the rulings of the district court denying those motions as well as the district court's calculation of his sentence. For the following reasons, we affirm.

I

On March 11, 1997, a breaking and entering occurred at a home in Lenawee County, Michigan. Firearms and various other items were stolen during the break-in.

On July 14, 1997, the Michigan State Police received a tip that the stolen property could be found at 8670 Jennings Drive in Leoni Township, Jackson County, Michigan. The tipster, who had previously supplied reliable information regarding narcotics violations to law enforcement officials, agreed to participate as an informant in buying one of the stolen firearms, a .38-caliber handgun.

On July 15, 1997, the informant was strip searched for contraband and weapons, given pre-recorded funds for the purchase, and placed under surveillance. The informant went directly to 8670 Jennings Drive, a mobile home, and purchased a .38-caliber handgun from Tracey Campbell. After a short conversation with Campbell, the informant left

the residence and met a State Police trooper at a predetermined location. The informant handed over the gun, which, the informant stated, Campbell had retrieved from a small trailer adjacent to his residence.

A subsequent records check revealed that Campbell had previous felony convictions in 1977 for attempted delivery of cocaine and in 1988 for second-degree criminal sexual conduct. Based on this information, the State Police applied for a search warrant for Campbell's mobile home, the adjacent smaller trailer, and a shed at 8670 Jennings Drive. The warrant authorized a search for "any and all firearms . . . and . . . narcotics and narcotic paraphernalia."

The search warrant was authorized by a state court judge and was executed on July 16, 1997. The police seized a total of fifteen firearms, including two weapons that had been stolen. On July 16, 1997, Campbell was arrested and charged in Jackson County Circuit Court with receiving and concealing stolen property over $100. On September 12, 1997, Campbell pleaded guilty to the charge. On October 15, 1997, he was sentenced to thirty to ninety months of imprisonment on the state charge.

A one-count information was filed against Campbell in federal district court on April 13, 1999, charging him with unlawfully possessing a firearm on or about July 27, 1997. On July 9, 1999, Campbell moved to suppress the evidence seized pursuant to the search warrant for his residence, on the basis that the warrant lacked probable cause for the search of his home. Campbell also moved to dismiss the information on the ground that his firearms privileges had been restored under Michigan law, so that he was no longer a convicted felon for purposes of § 922(g).

On August 3, 1999, the government filed a superseding information changing the charged date from July 27 to July 16, 1997. On September 2, 1999, the district court held a hearing on the two outstanding motions. On September 8, the district court denied Campbell's motion to suppress. On January 10, 2000, the court denied Campbell's motion to

dismiss the information, determining that the state had not restored Campbell's firearms privileges as a result of his 1977 conviction for attempted delivery of cocaine and his 1988 conviction for criminal sexual conduct.

On February 8, 2000, Campbell pleaded guilty to the superseding information, reserving the right to appeal the court's rulings regarding his suppression and dismissal motions. On May 2, 2000, Campbell filed a sentencing memorandum arguing that his base offense level should be reduced  because it was improperly based on his having committed a prior "crime of violence." On May 23, 2000, the district court rejected Campbell's argument that his base offense level should be reduced. The court sentenced Campbell to 51 months of imprisonment, with 31 months of credit as a result of his state incarceration on related charges, and a two-year term of supervised release.

## II

This court reviews for clear error the district court's factual findings regarding a motion to suppress evidence. *See United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000). The district court's conclusions of law are reviewed de novo. *See ibid.* The issue of probable cause for the issuance of a warrant is directed initially to the issuing judge. *See United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998). The judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A warrant will be upheld if there was a "substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing." *Id.* at 236.

In the search warrant affidavit for 8670 Jennings Drive, the police relied on the following: (1) information regarding an investigation into a breaking and entering in Lenawee County, Michigan in which firearms and other items were stolen; (2) a tip that the stolen items would be found at 8670 Jennings

## V

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

court held that the defendant's conviction for violating an Illinois statute punishing a man for sexual intercourse with a woman younger than seventeen and no more than five years younger than the man was not a crime of violence. The court noted secondary literature indicating that over forty percent of American sixteen-year-old girls have had sexual intercourse and that 45 of 50 states permit marriage at sixteen. *Id.* at 299. But the court also cited evidence that a sixteen-year-old girl may be at risk of physical injury when involved in sexual intercourse, particularly with an older man. *Ibid.* The court vacated the defendant's sentence. The court stated that the government had not cited secondary evidence of the risk of physical injury to a sixteen year old in justifying the defendant's sentence and that even if such evidence was used "it requires an essentially legislative judgment in a field in which the responsibility for making such judgments rests with Congress and the U.S. Sentencing Commission." *Id.* at 300 (citing *United States v. Meader*, 118 F.3d 876, 885 (1st Cir. 1997)).

Prior to *Thomas*, in *United States v. Shannon*, 110 F.3d 382 (7th Cir. 1997), the en banc court of the Seventh Circuit spoke extensively about the relative differences in the likelihood of physical injury to children thirteen to sixteen as a consequence of sexual contact. Interpreting a Wisconsin statute making it a felony for anyone to have "sexual contact or sexual intercourse with a person who has not attained the age of 16," the court held that sexual intercourse with a thirteen year old was a crime of violence, but left unresolved the issue of whether sexual contact with a person over thirteen was a crime of violence. *Id.* at 384, 388-89.

While we conclude that Campbell's conviction constitutes a crime of violence, we agree with the First and Seventh Circuits that "[t]hese are issues that . . . courts, and particularly appeals courts, have neither the expertise nor the authority to resolve in the first instance, and that, in light of the growing number of cases in the area, should be handled expeditiously by the Sentencing Commission and Congress." *Meader*, 118 F.3d at 885; *accord Shannon*, 110 F.3d at 389.

qualified as a crime of violence. *United States v. Arnold*, No. 95-6585, 1996 WL 435275, at *2 (6th Cir. Aug. 1, 1996).

Similarly, in this case the crime of second-degree criminal sexual conduct involving "sexual contact" with a person, age 13 to 16, of the same blood affinity presents a "serious potential risk of physical injury to another." USSG §4B1.2(a). Since the charging document is not in the record, "our inquiry remains limited to the statutory formulation of the prior offense." *United States v. Sherwood*, 156 F.3d 219, 221 (1st Cir. 1998). "In deciding whether the statutory crime constitutes a 'crime of violence,' we examine 'the typical run of conduct,' for this sort of offense." *Ibid.* (internal citation omitted). Although the crime can occur through mere consented touching, as Campbell asserts, there is a real possibility that physical force may be used in making sexual contact, particularly when the victim is a minor between 13 and 16 and within the strictures of familiarity and proximity bred by kinship. As several of our sister circuits have held, child molestation crimes "typically occur in close quarters, and are generally perpetrated by an adult upon a victim who is not only smaller, weaker, and less experienced, but is also generally susceptible to acceding to the coercive power of adult authority figures." *Ibid.* (quoting *United States v. Velazquez-Overa*, 100 F.3d 418, 422 (5th Cir. 1996)). *Velazquez-Overa* is particularly relevant in that it construed a Texas statute that prohibited "sexual contact" "with a child younger than 17 years," conduct similar to that for which Campbell was convicted. Campbell also committed his crime upon a younger family member, which inherently created additional risk of coercion and violence. Therefore, we conclude that the district court did not err when it sentenced Campbell on the basis that he had committed a prior crime of violence.[10]

---

[10]We recognize that courts have struggled with the issue of the proper age at which sexual conduct with a child constitutes a crime of violence.

In *United States v. Thomas*, 159 F.3d 296, 298-99 (7th Cir. 1998), the

Drive; (3) the development of an informant[1] who would assist the police in recovering the stolen property; (4) a controlled purchase by the informant of a .38-caliber handgun from Tracey Campbell at 8670 Jennings Drive; (5) the recovery of the handgun by Campbell from inside the trailer adjacent to the mobile home at 8670 Jennings Drive; (6) the informant's previous record of supplying reliable information regarding narcotics violations that were investigated and confirmed; and (7) the results of a records check revealing that Campbell had two prior felony convictions.

Campbell claims that because (1) the police lacked probable cause for the issuance of the search warrant and/or (2) the warrant, or portions of it, were invalid as overbroad, the district court should have granted his motion to suppress the evidence, or portions of evidence, collected from the execution of the search warrant. We will address these two contentions in turn.

A

Campbell asserts that the search warrant affidavit lacked probable cause for the search of Campbell's residence at 8670 Jennings Drive. Campbell claims that the affidavit was deficient in several respects: (1) it failed to state evidence of wrongdoing at 8670 Jennings Drive, (2) it was improperly based on an anonymous tip, and (3) it improperly included information regarding Campbell's previous felony record.

Campbell argues that the warrant affidavit failed to state that the .38-caliber handgun purchased at 8670 Jennings Drive was examined and found to be a stolen item or that the .38-caliber handgun was one of the items or handguns stolen in Lenawee County. Campbell argues that even if these facts are inferred from the warrant, the affidavit also failed to state

---

[1]The search warrant did not make clear that the tipster and the informant were the same person, although the government now asserts that they were and Campbell does not provide evidence to the contrary.

that additional stolen items were expected to be found at 8670 Jennings Drive.

Campbell asserts that the tip was provided by an anonymous and unidentified individual, not a trusted and reliable police informant. Campbell compares his case to those in which this court ruled that affidavits lacked probable cause when they were based solely on anonymous tips that courts deemed unreliable. *See United States v. Leake*, 998 F.2d 1359, 1365 (6th Cir. 1993) (warrant affidavit held lacking in probable cause where based solely on anonymous phone caller's tip that the caller entered defendant's home, smelled marijuana, and observed what appeared to be marijuana stacked in the basement); *United States v. Baxter*, 889 F.2d 731, 733 (6th Cir. 1989) (warrant affidavit held lacking in probable cause where based solely on anonymous phone caller's tip that the caller had been to particular address and observed defendant sell cocaine to unknown white male). Campbell claims that his case is dissimilar from cases in which this court upheld search warrants based on information from informants who were known and reliable and who offered detailed personal observations of the defendant's criminal activity. *See United States v. King*, 227 F.3d 732 (6th Cir. 2000); *United States v. Williams*, 224 F.3d 530 (6th Cir. 2000); and *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000) (en banc).

Campbell concedes that the search warrant affidavit did not rely solely on the tip, but also included information from the informant, who had supplied reliable information to law enforcement in the past and who made a controlled purchase of a .38-caliber handgun at 8670 Jennings Drive. The government states that the tipster and the informant are the same individual. Campbell points out, however, that the affidavit does not make this clear. Therefore, Campbell argues that, while the informant may have supplied reliable information to law enforcement in the past, it is not clear from the affidavit that the tipster had done so as well.

charged) in the count of which the defendant was convicted . . . by its nature, presented a serious potential risk of physical injury to another.

In determining whether a particular offense constitutes a "crime of violence" under the Guidelines, this court follows a categorical approach "limited to an examination of the fact of conviction and the statutory definition of the predicate offense." *United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995). Under this approach, "it is not only impermissible, but pointless, for the court to look through to the defendant's actual criminal conduct." *Ibid.*

In this case, Campbell's predicate felony was a 1988 conviction for second-degree criminal sexual conduct under M.C.L. § 750.520c. The parties do not dispute that the conviction was pursuant to M.C.L. § 750.520c(1)(b)(ii), which prohibits "sexual contact" with a person, age 13 to 16, of the same blood affinity. Campbell argues that since this offense can occur through mere consented touching and does not contain an element of physical force, it should not be considered a crime of violence. Campbell relies on *Arnold*, in which this court held that a defendant's prior conviction for assault with intent to commit sexual battery was not necessarily a "crime of violence" within the meaning of the Sentencing Guidelines, reversing the district court and remanding the case for reconsideration. 58 F.3d at 1122. Campbell asserts that since he did not commit a crime of violence, his sentence should be vacated and the case should be remanded for resentencing.

Campbell's reliance on *Arnold* is misplaced. This court remanded the case to the district court for further findings because the district court improperly delved into the underlying facts of the defendant's predicate state conviction for assault with intent to commit sexual battery, something that did not occur in this case. Moreover, this court later upheld the district court's application of the categorical approach on remand and its determination that the crime involved the potential risk of physical injury such that it

*Gilliam* is also inapposite. Gilliam was charged as a federal felon-in-possession in 1991, one year *before* M.C.L. § 750.224f was passed. Moreover, his underlying conviction was a 1978 conviction for first-degree criminal sexual conduct. Although the case does not state when Gilliam was released from prison, it is likely that the existing eight-year restriction on Gilliam's right to possess a pistol in 1978 had already expired by the time Gilliam was charged as a felon in possession in 1991.

### IV

Campbell's final argument is that the district court erred when it sentenced him on the basis that he had committed a prior "crime of violence" under USSG §2K2.1(a)(4)(A), requiring the imposition of a base offense level of 20.

The term "crime of violence" as used in §2K2.1(a)(4)(A) is defined by USSG §4B1.2(a), which states that:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> (1)  has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2)  is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*.

(emphasis added). Application note 1 of §4B1.2(a) states that a "crime of violence" includes "forcible sex offenses." In addition, the application note states that:

> Other offenses are included as 'crimes of violence' if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person or another, or (B) the conduct set forth (*i.e.*, expressly

Campbell also challenges the degree to which the inclusion of Campbell's prior felony record in the affidavit can support a finding of probable cause, relying on this court's statement that "merely verifying information such as addresses, phone numbers, license numbers, and even criminal records is not sufficient to corroborate an informant's statement." *United States v. Ingram*, No. 92-5367, 1993 WL 5914, at *1 (6th Cir. Jan. 13, 1993) (citing *Baxter*, 889 F.2d at 733).

When reviewing Campbell's claims regarding the probable cause for the search of his residence, we note that a state court judge's determination of probable cause is entitled to "great deference" on review. *Gates*, 462 U.S. at 236. The reviewing court must examine the totality of the circumstances and determine if the state court judge had a "substantial basis" for concluding that a "search would uncover evidence of wrongdoing." *United States v. Sonagere*, 30 F.3d 51, 53 (6th Cir. 1994) (quoting *Gates*, 462 U.S. at 236).

In this case, there was a substantial basis for concluding that a search of Campbell's residence would uncover evidence of wrongdoing. The following information included in the search warrant affidavit indicates that there was a substantial basis for searching Campbell's residence: (1) a reliable confidential informant;[2] (2) the informant's track record of

---

[2] Although the search warrant affidavit does not clearly indicate that the tipster and informant were the same person, this information can potentially be inferred from the affidavit. Moreover, Campbell has not disputed the government's statement that the tipster and informant were the same individual.

In addition, the police may have had valid reasons for obscuring the identity of the informant in the warrant affidavit. The informant was an accomplice in the robbery of the home in Lenawee County, and had previously sold two of the stolen guns from the robbery to Campbell. The government asserts that while the police officers who prepared the affidavit were aware of this additional information regarding the informant, they may have omitted the information from the affidavit to protect the identity of the informant during the course of the developing investigation. *See United States v. Smith*, 182 F.3d 473, 482 n.5 (6th Cir. 1999) ("limited privilege exists to withhold information which could

providing accurate information in previous narcotics investigations; (3) the informant's tip that "items stolen from 6650 S. Occidental" (where a previous burglary had, in fact, occurred) "would be located at 8670 Jennings Dr."; (4) the informant's volunteering to assist the police by making a controlled purchase of a stolen weapon from 8670 Jennings Drive; (5) the fact that, within the previous 24 hours, a controlled purchase of a .38-caliber handgun from the suspect at the specified addressed had occurred; and (6) the police's independent investigation to determine that the suspect was a convicted felon.

These facts demonstrate that the police suspected that stolen property would be located at 8670 Jennings Drive, since the police had information from a reliable informant that stolen property would be located at the residence and then corroborated that information by organizing a controlled purchase at that location and obtaining additional information about the suspect who resided there. Contrary to Campbell's assertions, it was not necessary for the police to state that the handgun purchased at 8670 Jennings Drive was found to be a stolen item, to link the handgun to the Lenawee County breaking and entering, or to indicate that other stolen items may be found at the residence. The police established sufficient probable cause through the tip and the subsequent corroboration of the tip by the controlled purchase of a handgun at Campbell's residence.

Although Campbell attempts to argue that his case is similar to those in which the police relied solely on uncorroborated anonymous tips, this argument is unpersuasive. The police did not rely solely on the anonymous tip that they received that stolen property was located at 8670 Jennings Drive. The police corroborated the tip through a controlled purchase at the 8670 Jennings Drive location and an investigation into Campbell's previous felony record. The cases that Campbell relies upon determined that

identify an informant").

First, with regard to *Hampton*, the government notes that the sole issue in the case was whether the defendant's civil rights were restored in general. The "unless clause" in 18 U.S.C. § 921(a) was not discussed in the court's opinion. The court appeared to indicate that Hampton's firearms rights were restored along with his other civil rights. The court did not specifically address the restoration of Hampton's firearm rights. A close reading of *Hampton* indicates that, at the time of Hampton's 1994 indictment under § 922(g), more than three years had passed since his 1986 state conviction and his discharge from probation on May 8, 1987. Since Hampton's underlying state conviction of attempted possession of a weapon other than a firearm fell into the "non-specified" category of M.C.L. § 750.224f(1), his rights would have been restored in 1990, three years after his discharge from probation. This is because there is no requirement under M.C.L. § 750.224f(1) (unlike under M.C.L. § 750.224f(2)) that a convicted felon apply for restoration of his weapons privileges from his local gun board. As a result, there was no need for the *Hampton* court to address the "unless clause."

Furthermore, the eight-year restriction on Hampton's right to a possess a pistol that was in effect when Hampton was convicted in 1986 would have expired by the time he was charged as a felon in possession on October 17, 1994. The court in *Hampton* does not state the date of Hampton's 1986 conviction, but the court does state that Hampton "was sentenced to one year of probation for the predicate offense and was discharged from such probation on May 8, 1987." 191 F.3d at 697. There is no indication that Hampton's discharge from probation occurred prior to the completion of the one-year period of probation to which he was sentenced. Therefore, we assume that his date of conviction was May 8, 1986. The eight-year restriction in place in 1986 ran from the time of conviction or the end of incarceration. Since Hampton was not incarcerated for his 1986 conviction, the eight-year limitation on his right to possess a pistol would run from the date of his conviction, which the court indicates was May 8, 1986. The restrictions would have expired on May 8, 1994, prior to Hampton's charge as a felon in possession.

regardless of whether M.C.L. § 750.224f could be applied to Campbell at the time of his conviction, his right to possess firearms would still have been restricted and he would be subject to being a felon in possession pursuant to 18 U.S.C. § 922(g)(1) and the "unless clause" of 18 U.S.C. § 921(a)(20).

Campbell also relies upon *Hampton* and *Gilliam*, in which this court determined that felony convictions predating the October 1992 enactment of M.C.L. § 750.224f could not serve as predicate offenses for federal felon-in-possession charges since, in each case, the felon's civil rights had been restored under Michigan law.    Both cases can be distinguished.

---

"unless clause" of 18 U.S.C. § 920(a)(20). *See United States v. Carnes*, 113 F. Supp. 2d 1145, 1159-60 (E.D. Mich. 2000); *United States v. Brown*, 69 F. Supp. 2d 925, 941-44 (E.D. Mich. 1999). The *Brown* court concluded that "[u]nder *Caron*, it apparently does not matter that Defendant did not violate any of the restrictions Michigan continues to impose on convicted felons, or that these restrictions are relatively minor in scope; all that matters is that Michigan does in fact impose such limits." 69 F. Supp. 2d at 941.

In this case, Campbell was restricted from obtaining a concealed weapons license for eight years beginning on November 14, 1989, when he was released from prison after his 1988 conviction for second-degree criminal sexual conduct.  M.C.L. § 28.426(1).  That restriction was still in existence when Campbell was charged as a felon in possession on July 16, 1997.  Under the reasoning of *Carnes* and *Brown*, this restriction would have been sufficient to charge Campbell as a felon in possession. We note, however, that there is a difference between the issue of the effect of a state's laws giving a felon the right to possess certain types of weapons and not others--which the Supreme Court ruled in *Caron* can provide the basis for a felon-in-possession charge--and the issue of the effect of a state's laws giving a felon the right to possess all types of weapons, but not the right to conceal some or all of those weapons. Since we hold that Campbell's rights to possess firearms would not have been fully restored at the time he was charged as a felon in possession on July 16, 1997, even if the 1992 enactment of M.C.L. § 750.224f as applied to Campbell was unconstitutional, we do not reach the issue of whether the restriction on Campbell's right to carry concealed weapons was independently sufficient to uphold Campbell's felon-in-possession charge.

---

search warrants lacked probable cause because they were based solely on anonymous tips that were deemed unreliable. That is simply not the case here.

Furthermore, the search warrant affidavit in this case was based on more corroboration than in other cases in which this court upheld warrants based on information from an informant.  For example, in *United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993), this court ruled that probable cause was established solely by a reliable informant's observation of drug trafficking at an identified residence within the past five days.  In addition, in *Smith*, 182 F.3d 473, a reliable confidential informant had been in the suspect's home within the past forty-eight hours and observed weapons there. Local police officers obtained a photograph of the suspect and observed the suspect entering and leaving the home.  The officers confirmed the suspect's address and verified that the suspect was a convicted felon.  The officers obtained a warrant, found weapons, and charged Smith with being a felon in possession of firearms.  This court reversed the district court's finding that the warrant was insufficient. The court stated that "the informant's basis of knowledge was firsthand, and there was no need for the informant to speculate further about whether a crime was being committed because mere gun possession by a felon constitutes a felony." *Id.* at 480.  The court held that "a warrant affidavit which recites that recent criminal activity was personally observed by a highly reliable informant, aspects of which are corroborated by further police investigation, establishes probable cause." *Id.* at 476.  In this case the police did not rely solely on observations of illegal activity by the informant and by police.  Instead, the police relied on a tip from a reliable informant and corroborated the tip by a controlled purchase of a firearm from the suspect and review of the suspect's criminal record. This information was similar to, if

not more than, that relied upon to obtain the search warrants upheld in *Finch* and *Smith*.[3]

Finally, the police did not improperly rely upon Campbell's prior felony record in establishing probable cause. This is not a case in which the police "merely verif[ied] information" to corroborate an informant's statement. *Ingram*, 1993 WL 5914, at *1. Rather, the police conducted additional investigation into Campbell's prior felony record and used this additional information as further support to corroborate the informant's tip and to demonstrate probable cause.

### B

Campbell also argues that, even if there was probable cause for the issuance of the search warrant, portions of the warrant were invalid because the warrant was overbroad in that it did not sufficiently describe the place to be searched and the things to be seized.

The Fourth Amendment to the United States Constitution requires that a warrant describe with "particular[ity] . . . the place to be searched and the persons or things to be seized." U.S. CONST. amend. IV. Courts have held that a warrant referring to stolen property of a certain type is insufficient if that property is common. *See United States v. Spilotro*, 800 F.2d 959, 965 (9th Cir. 1986) (description of "gemstones and other items of jewelry" not sufficiently particular in search of jewelry store). If the purpose of the warrant is to seize illicit property or contraband, however, a general reference is permissible. *See United States v. Morris*, 977 F.2d 677, 680-81 (1st Cir. 1992) ("drugs and narcotics" sufficient).

---

[3] It is true that the warrant affidavit does not clearly establish that the tipster and the informant were the same person. Campbell has not presented any evidence disputing this, however. Even if they were different, this fact would not by itself support a finding of a lack of probable cause. There is no requirement that the tip and the controlled purchase must involve the same person.

prior to its October 13, 1992 effective date does not constitute an ex post facto violation. *See, e.g., Hervey v. United States*, 105 F. Supp. 2d 731, 735 (E.D. Mich. 2000); *Kramer v. United States*, No. 99-76146, 2000 WL 654830 (E.D. Mich. Apr. 14, 2000); *People v. Swint*, 572 N.W.2d 666, 676 (Mich. Ct. App. 1997); *People v. Tice*, 558 N.W.2d 245, 246-47 (Mich. Ct. App. 1997). No court has yet to hold to the contrary.

In *Tice*, the court concluded that § 750.224f does not violate the Ex Post Facto Clauses of the United States or Michigan Constitutions because "the state's predominant interest in enacting M.C.L. § 750.224f . . . was not the infliction of further punishment on those who had been convicted of previous felonies . . . [but] to protect the public by precluding certain convicted felons from possessing firearms." 558 N.W.2d at 247. Moreover, the court stated that the conduct being punished was not any act that preceded the date the statute took effect, but the defendant's "recent act of possessing a firearm." *Ibid.*

Although we find this reasoning persuasive, we choose not to apply it to the facts of this case. Instead, we hold that, even if the 1992 enactment of M.C.L. § 750.224f as applied to Campbell was unconstitutional, Campbell's rights to possess a firearm still would not have been fully restored at the time he was charged as a felon in possession on July 16, 1997. At the time of Campbell's conviction in 1988, M.C.L. § 28.422 imposed an eight-year restriction on Campbell's ability "to purchase, carry, or transport a pistol." This restriction applied to Campbell when he was released from prison on November 14, 1989. The restriction would have continued until November 14, 1997, approximately four months after Campbell's felon-in-possession charge.[9] Therefore,

---

[9] We note that at least two federal district courts in Michigan have found Michigan's eight-year limitation on a convicted felon's ability to obtain a concealed weapons license under M.C.L. § 28.426(1) to be a sufficient restriction on the privilege to possess firearms to uphold felon-in-possession convictions pursuant to 18 U.S.C. § 922(g)(1) and the

felony under M.C.L. § 750.244f(6)(i),[8] the restrictions in M.C.L. § 750.224f(2) would apply to him. Under M.C.L. § 750.224f(2), Campbell's right to "possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm" would be restricted for five years after his release from parole on January 2, 1991. In addition, after the five-year waiting period, Campbell would have to apply to his county concealed weapons licensing board to have his general firearms rights restored. M.C.L. § 28.424.

This court has stated that "[i]t is the status of the defendant on the date he possessed the firearm as alleged in the indictment that controls whether or not he has violated [§ 922(g)]." *United States v. Morgan*, 216 F.3d 557, 565-66 (6th Cir. 2000). Campbell was charged as a felon in possession of a firearm on July 16, 1997. At that time Campbell's right to possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm was restricted under M.C.L. § 28.422 and M.C.L. § 750.224f. Although five years had passed since Campbell was released from parole on January 2, 1991, Campbell had not applied to his county concealed weapons board to have his rights restored as required in M.C.L. § 750.224f(2)(b) and M.C.L. § 28.424.

Campbell argues that M.C.L. § 750.224f is unconstitutional as applied to him pursuant to the Ex Post Facto Clause of the United States Constitution. Campbell bases his argument on the fact that M.C.L. § 750.224f was enacted in October 1992, after Campbell's 1988 conviction and his release from parole on January 2, 1991.

This court has not yet ruled on whether application of M.C.L. § 750.224f in the context of a felon-in-possession charge pursuant to 18 U.S.C. § 922(g)(1) constitutes an ex post facto violation. Michigan state courts and federal district courts in Michigan have held that application of M.C.L. § 750.224f to felons whose predicate convictions occurred

---

[8]Campbell has not appealed this finding of the district court.

Campbell analogizes his case to *United States v. Gardner*, 537 F.2d 861, 862 (6th Cir. 1976), in which this court determined that when executing a warrant for "all firearms and ammunition," the police had probable cause to search for a .38-caliber pistol allegedly used in a murder, but the officers did not have probable cause to seize a sawed-off shotgun, which was suppressed.

Campbell claims that in this case the police sought a warrant to recover specific firearms that were known to have been stolen, yet the warrant sought the seizure of "[a]ny and all firearms located at the residence and any and all narcotics and narcotic paraphernalia." Campbell contends that in their search warrant affidavit the police did not establish probable cause to search for firearms in general. In addition, Campbell argues that the only evidence supporting probable cause for the presence of narcotics was Campbell's twenty-year-old narcotics-related conviction. As a result, Campbell claims that the warrant was overbroad. Campbell asserts that the portions of the search warrant unrelated to stolen items should be invalidated, leading to suppression of the firearms seized from the house that were not known or alleged to be have been stolen.

This court has made it clear that general warrants not describing with particularity things to be searched can "create a danger of unlimited discretion in the executing officer's determination of what is subject to seizure and a danger that items will be seized when the warrant refers to other items." *United States v. Savoca*, 761 F.2d 292, 298-99 (6th Cir. 1985). Yet, this requirement of specificity is flexible and varies with the crime involved and the types of items sought. Thus, this court has stated that a description is valid "if it is as specific as the circumstances and the nature of the activity under investigation permit." *United States v. Ables*, 167 F.3d 1021, 1033 (6th Cir. 1999).

In this case, the warrant was as specific as the circumstances permitted since the officers were looking for *any* weapons, not just stolen weapons. The officers, some of

whom were members of a federal-state task force, were aware not only that some of the stolen items from Lenawee County were at 8670 Jennings Drive, but that Campbell's record indicated that he had prior felony convictions. Therefore, the officers knew that Campbell could be subject to prosecution as a felon in possession under federal or state law. 18 U.S.C. § 922(g); M.C.L. § 750.224f. Since possession of any weapon would potentially be illegal under these statutes, it was not improper for the search warrant for Campbell's residence to cover "[a]ny and all firearms."[4]

Campbell also argues that the warrant failed to particularize the place to be searched. Campbell relies on *Maryland v. Garrison*, 480 U.S. 79, 84 (1987), in which the Supreme Court stated that "probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom." In this case, Campbell notes that the police had specific information that one of the firearms believed to have been stolen was observed to have been retrieved from inside the smaller trailer adjacent to Campbell's primary residence. Campbell argues that, instead of limiting their search warrant, the police sought and obtained a warrant for the primary residence, notwithstanding the fact that three separate structures were located on the property (the mobile home residence, the smaller trailer, and a shed).

The warrant was not overbroad as to the portions of Campbell's residence to be searched. The affidavit described the residence as "a single family dwelling, Mobile home, white in color, with an additional smaller mobile home and a shed which occupies the same lot; these additional structures are with in the curtilage of 8670 Jennings Dr. and are used by the same occupant." This case is similar to *United States v. Bennett*, 170 F.3d 632, 639 (6th Cir. 1999), in which a

by Ohio law, he remained a felon under federal law because "he was expressly restricted under state law from possessing a firearm . . . ."). Therefore, if the law of the State of Michigan places a restriction on a felon's right or privilege to possess firearms following a conviction, that person retains the status of a convicted felon and is subject to prosecution under § 922(g), notwithstanding any restoration of civil rights by the convicting jurisdiction. *See Caron*, 524 U.S. at 314-17.

Campbell was paroled on his second-degree criminal sexual conduct conviction on November 14, 1989. His parole was discharged on January 2, 1991. At that time, Campbell's civil rights were restored since a felon's rights are restored under Michigan law upon completion of the felon's sentence, which includes incarceration, parole, and probation. *See Hampton*, 191 F.3d at 702; *Froede*, 523 N.W.2d at 852. Although Campbell's civil rights were restored, his rights to possess firearms remained limited. At the time Campbell's parole was discharged, Michigan law did not allow possession of a "pistol"[7] by individuals convicted of a felony or incarcerated as a result of a felony conviction during the eight years immediately preceding the individual's date of application for a pistol license. M.C.L. § 28.422(1). Since this restriction only refers to the dates of conviction and incarceration and not to probation, parole, or other components of a criminal sentence, we interpret the eight-year waiting period as beginning after the felon is released from prison. *Cf. United States v. Carnes*, 113 F. Supp. 2d 1145, 1160 n.12 (E.D. Mich. 2000).

In 1992, Michigan amended M.C.L. § 28.422 and enacted M.C.L. § 750.224f. Since Campbell's 1988 second-degree criminal sexual conduct conviction qualifies as a specified

---

[4] To the extent that Campbell challenges the warrant on the basis that it included "narcotics and narcotic paraphernalia," this issue is moot since no narcotics were seized from the residence and Campbell was not charged with any drug offenses.

---

[7] Under Michigan law at the time, "pistol" was defined as "any firearm, loaded or unloaded, that is 30 inches or less in length, or any firearm, loaded or unloaded, which by its construction and appearance conceals it as a firearm." M.C.L. § 28.421.

a specified felony under M.C.L. § 750.224f(6), the provisions of M.C.L. § 750.224f(2) would apply to him. It was undisputed that Campbell had never applied to the county concealed weapons board for restoration of his firearms disability, pursuant to M.C.L. § 750.224f(2)(b) and M.C.L. § 28.424, by the time of his felon-in-possession charge on July 16, 1997. Therefore, although he fulfilled the other requirements of M.C.L. § 750.224f(2), the district court ruled that he was forbidden to possess firearms under Michigan law.

Campbell argues that the district court erred because his underlying felony convictions in 1977 and 1988 predated the October 1992 enactment of M.C.L. § 750.224f. Campbell relies on two cases in which this court ruled that, under the circumstances of each case, felons with prior convictions predating the enactment of M.C.L. § 750.224f had had their civil rights restored under Michigan law. *See Hampton*, 191 F.3d 695; *Gilliam v. United States*, No. 99-1347, 2000 WL 553919 (6th Cir. Apr. 28, 2000).

Campbell's arguments are unavailing. The federal felon-in-possession statute involves a two-part inquiry: (1) if a convicted felon's civil rights have been restored under state law, he shall no longer be considered a felon for purposes of § 922(g), except (2) if, pursuant to the "unless clause" of § 921(a)(20), the felon remains prohibited from firearms possession. This court has stated that the "unless clause" applies if the "restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." *United States v. Cassidy*, 899 F.2d 543, 546, 550 & n.15 (6th Cir. 1990) (noting that the inquiry involves both "released felon's civil rights and firearms privileges" and ruling that, although defendant's civil rights had been restored

---

or property of another, or that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
. . . .

---

defendant argued that a search warrant for his address only included his residence and did not extend to an outbuilding located on his property, since the affidavit did not allege illegal activity in the outbuilding. This court rejected the argument, stating that "there is no need to search for evidence to link the outbuilding to the allegations in the affidavit; the shop building and the residence are sufficiently connected because they are both within the curtilage of the defendant's property." *Ibid.* Similarly, since all of the buildings at 8670 Jennings Drive were within the curtilage of the property, there was no need to demonstrate probable cause to search each building on the property.

In addition, there was probable cause to believe that the items to be seized could have been found in any portion of the defendant's property. In this regard, the search of Campbell's property differed from the hypothetical example in *Garrison* about the use of a search warrant for a lawnmower to search an upstairs bedroom. Just before providing the example upon which Campbell relies, the *Garrison* Court stated that "the scope of a lawful search is 'defined by the object of the search and the places in which there is probable cause to believe that it may be found.'" 480 U.S. at 84 (citation omitted). Unlike the case of searching a bedroom to find a lawnmower, in this case there was probable cause to believe that firearms could be found throughout Campbell's property.[5]

### III

Campbell argues that his motion to dismiss his felon-in-possession charge should have been granted by the district court because, although he had two prior state felony convictions (a 1988 conviction for second-degree criminal sexual conduct and a 1977 conviction for attempted delivery

---

[5]Campbell also argues that the "good faith" exception in *United States v. Leon*, 468 U.S. 897 (1984), does not apply to save the inadequate affidavit and warrant for 8670 Jennings Drive. Since we have determined that the affidavit and warrant were adequate, we do not need to reach this issue.

of cocaine), his civil rights were restored by the State of Michigan.

Campbell was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), which states:

> It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition[.]

The definition of what may serve as a predicate "conviction" under § 922(g)(1) is provided in 18 U.S.C. § 921(a)(20):

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held.  Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

Under § 921(a)(20), "the law of the State of conviction, not federal law, determines the restoration of civil rights as a rule." *Caron v. United States*, 524 U.S. 308, 316 (1998).

In § 922(g)(1) cases, this court has determined that essentially all of a former felon's civil rights, including the right to vote, hold public office, and sit on a jury, are restored under Michigan law upon the former felon's release from custody. *See Hampton v. United States*, 191 F.3d 695, 702 (6th Cir. 1999) (citing *Froede v. Holland Ladder & Mfg. Co.*, 523 N.W.2d 849, 852 (Mich. Ct. App. 1994)).

The district court concluded that, although Campbell's civil rights were restored, he was still a felon in possession under § 922(g)(1) as a result of the "unless clause" in 18 U.S.C. § 921(a)(20), which states that "[a]ny conviction . . . for

which a person . . . has had civil rights restored shall not be considered a conviction . . . unless such . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms."  The district court concluded that Campbell was prohibited from possessing a firearm under the restrictions contained in M.C.L. § 750.224f.[6]  Since Campbell's 1988 conviction qualified as

---

[6]The relevant portions of M.C.L. § 750.224f state:

(1) Except as provided in subsection (2), a person convicted of a felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state until the expiration of 3 years after all of the following circumstances exist:
    (a) The person has paid all fines imposed for the violation.
    (b) The person has served all terms of imprisonment imposed for the violation.
    (c) The person has successfully completed all conditions of probation or parole imposed for the violation.
(2) A person convicted of a specified felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state until all of the following circumstances exist:
    (a) The expiration of 5 years after all of the following circumstances exist:
        (i) The person has paid all fines imposed for the violation.
        (ii) The person has served all terms of imprisonment imposed for the violation.
        (iii) The person has successfully completed all conditions of probation or parole imposed for the violation.
    (b) The person's right to possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm has been restored pursuant to section 4 of Act No. 372 of the Public Acts of 1927, being section 28.424 of the Michigan Compiled Laws.
  . . .

(6) As used in subsection (2), "specified felony" means a felony in which 1 or more of the following circumstances exist:
    (i) An element of that felony is the use, attempted use, or threatened use of physical force against the person