**UNITED STATES of America,**

v.

**Kenneth D. SMITH, aka McKinley Smith, Appellant**

**No. 01–2089.**

United States Court of Appeals, Third Circuit.

Jan. 23, 2003.

Before BECKER, Chief Judge, McKEE, HILL,* Circuit Judges.

## OPINION OF THE COURT

McKEE, Circuit Judge.

Kenneth Damone Smith appeals the district court's denial of his suppression motion, and the sentence that the court imposed after a jury convicted him of illegal possession of a firearm in violation of 18 U.S.C. § 922(g)(1). For the reasons that follow, we will affirm.

### I.

Inasmuch as we write only for the parties who are familiar with the facts underlying this appeal, we need only recite the factual background insofar as it is helpful to our brief discussion.

On March 24, 1999, members of the Philadelphia Police Department conducted a search of 1346 South 52nd Street pursuant to a search warrant. The affidavit supporting the warrant stated that a shopkeeper named "Curtis Moses" had informed police that McKinley Smith, (aka "Kevin Smith") stole a semiautomatic Glock handgun from Moses' store on

* Honorable James C. Hill, Eleventh Circuit Court of Appeals, sitting by designation.

March 16, 1999. Moses stated that he knew Smith personally and could positively identify him as the thief because Smith took the gun in Moses' presence. Moses' son informed police that Smith lived on the same block as his father's store.

Thereafter, police confirmed that a semiautomatic Glock handgun was registered to Moses, and they also learned that Smith was a convicted felon with 12 prior arrests including robbery, aggravated assault and witness intimidation.

Based upon this information, a bail commissioner issued a search warrant for Smith's residence naming him as the "owner, occupant or possessor" of the house to be searched. The warrant authorized police to seize the Glock handgun as well as any other ammunition, firearms, and any and all other fruits or instrumentalities of the crime. On March 24, 1999, hours before the search was to be executed, William Sample, a homeowner, reported the burglary of his home at 1332 South 52nd Street. Nine firearms were reportedly taken during that burglary including two rifles.

Subsequently, on March 24, 1999, at approximately 9:15 pm, police officers executed the search warrant they had obtained for Smith's residence at 1346 South 52nd Street. During their search of that residence, they found two rifles hidden under a mattress. Police later confirmed that two rifles had been stolen from Sample's home earlier that day during the aforementioned burglary. Based upon the evidence discovered during the search, Smith was arrested and charged with being a felon in possession of a firearm in violation of 18 U.S.C. 922(g)(1).

Prior to trial, Smith moved to suppress the evidence that police had seized. He claimed that inasmuch as the warrant only authorized the seizure of the Glock handgun and "any other ammunition or fire-

arms" and "any and all fruits of crime," the rifles were beyond the scope of the warrant and not covered by the supporting affidavit which only referred to the Glock taken from Moses. Accordingly, argued Smith, there was no probable cause to seize any items relating to the burglary of Sample's residence. The district court disagreed.

The court concluded that the warrant was supported by probable cause, and it properly authorized police to seize any and all weapons found in Smith's residence. Thereafter, a jury convicted Smith of being a convicted felon in possession of a firearm, and he was sentenced to the maximum period of incarceration of 120 months.

## II.

Smith first argues that he search warrant was not supported by probable cause because it referred only to the robbery of Curtis Moses' store on March 16, 1999 and did not refer to the March 24, 1999 burglary of Sample's residence. He also argues that the search warrant was overbroad to the extent that it authorized a search for "any ammunition and firearms" or "fruits of crime." The government argues that probable cause did exist and that, even if it did not, the evidence was still admissible under both the "plain view" and "good faith" exceptions to the exclusionary rule.

### A.

Our review of the district court's determination of probable cause is limited to " 'whether, [given all the circumstances set forth in the supporting affidavit] there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *United States v. Jones,* 994 F.2d 1051, 1056 (3d Cir.1993) (omission in original) (quoting *Illinois v. Gates,* 462

U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). In conducting our review, the magistrate's underlying finding of probable cause is entitled to deference. *See, United States v. Conley,* 4 F.3d 1200 (3d Cir.1993) (holding that a reviewing court's task is limited to determining whether the magistrate had a substantial basis for concluding that probable cause existed).

■ Here, given Moses' familiarity with Smith, the record clearly supports the initial finding of probable cause. Moses was able to identify Smith as the one who robbed his store and stole a Glock handgun. Police independently confirmed that such a gun was registered to Moses, and that Smith, the identified perpetrator, lived very near Moses' store. Police also learned that Smith had a substantial criminal record.[1] Accordingly, police had probable cause to enter Smith's residence at 1346 South 52nd Street, and conduct a search pursuant to the resulting warrant. Therefore, the entry and search are not affected by the fact that police discovered rifles stolen from Sample while searching for Moses' gun. The officers knew that Smith was a convicted felon and therefore knew that he could not lawfully possess the weapons they found. Accordingly, they knew that the weapons constituted evidence of a crime and contraband, and were therefore within the scope of the authority conferred by the warrant in seizing the rifles.

### B.

■ Smith also argues that the seizure was invalid because the warrant was overbroad and gave police free reign to search

his residence. Although we agree that the warrant appears to confer unfettered authority by authorizing seizure of "any and all other ammunition and firearms" and "any fruits of the crime," we do not agree that the warrant was "overbroad."[2] *See United States v. Campbell,* 256 F.3d 381, 389 (6th Cir.) (2001). The appellant in *Campbell* was also charged with illegal possession of a firearm in violation of 18 U.S.C.A. § 922(g). Police searched Campbell's residence pursuant to a warrant that authorized them to search for a list of items including "any and all firearms." During the course of the search police found stolen firearms, including two weapons taken during the burglary that caused police to apply for the warrant. The Court of Appeals for the Sixth Circuit upheld the district court's denial of Campbell's suppression motion. The court reasoned that police knew that Campbell was a convicted felon, and any weapons found in his possession would therefore constitute evidence of a violation of 18 U.S.C. § 922(g) *Id.* at 385–86. That is precisely the situation here.

■ Moreover, as stated above, since the warrant was valid, police could properly seize the disputed evidence because it was in plain view of the officers. *United States v. Scarfo,* 685 F.2d 842, 845 (3d Cir.1982). The officers were legally at the location of the discovery, and the incriminating nature of the evidence was obvious because they knew he could not legally possess firearms. Therefore, the rifles were admissible even if their discovery was not inadvertent. *Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301,

---

1. Smith does not raise a "staleness" argument.

2. *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)

(holding that the Fourth Amendment requires that a warrant describe with particularity the place to be searched and the persons or things to be seized).

110 L.Ed.2d 112 (1990).[3]

In addition, even assuming *arguendo,* that the warrant was overbroad, the evidence would also be admissible under the good faith exception to the warrant requirement as set forth in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *See United States v. Kepner,* 843 F.2d 755, 763 (3d Cir.1988). Accordingly, the district court did not err in denying his motion to suppress the physical evidence.

Smith's challenge to his sentence is also without merit.

## II.

■ Smith first argues that the district court erred in applying a three-level upward adjustment pursuant to USSG § 2K2.1(b)(1). He objects to the pre-sentence report's conclusion that his offense involved ten firearms because he was only convicted of possessing two of the firearms seized from 1346 South 52nd Street and one taken from Moses' store. He claims that there was insufficient evidence to attribute any other firearms to him, and that the district court therefore erred in overruling his objection. We review this claim for plain error because Smith did not object to the district court's conclusions of fact. *United States v. Stewart,* 283 F.3d 579, 581 (3d Cir.2002).[4]

Defense counsel's only objection to the three-level adjustment was based upon the fact "[Smith] was not charged with either the robbery or the burglary." It was on this basis that Smith's counsel urged the district court to ignore the pre-sentence report's recommendation to enhance Smith's sentence based upon relevant conduct.[5] The record shows that the district court gave Smith's counsel several opportunities to raise a factual objection. However, no such objection was raised.[6]

---

**3.** Here, Detective McDermott, did know that two firearms fitting the description of the items seized had been taken from Sample's house during the March 24, 1999 burglary.

**4.** Although Smith submitted a letter to the pre-sentence investigator challenging portions of the pre-sentence report, his objections were confined to paragraphs 24, 25, and 26 of the report which stated the *legal* basis that led to the investigator's recommendation for an adjustment for relevant conduct. Smith did not raise any objection to the factual findings regarding the number of firearms as set forth in the report at paragraphs 10, 11, and 12. App. 384.

**5.** The following exchange occurred between defense counsel and the court at sentencing:

MR. HOOF: Your Honor, relevant conduct would be a stretch in this matter. The jury only heard testimony regarding two guns that were under his bed.

THE COURT: We're not talking about what the jury heard, because the government presented evidence to the grand jury that only went for those two possessions-two weapons that your client was ultimately indicted on. All right? They only presented evidence in reference to those. But there was some testimony or indication that the victim's guns were taken out of his place. Among these guns were the guns that your client had. All right?

*The totality of the guns that were taken is what this court has a duty and a responsibility to consider under relevant conduct.* Now, what do you say in reference to relevant conduct that ties your client or disassociates him from the victim of this offense.

MR. HOOF: My client was never charged with those other guns. There was another individual who came to court and testified in court that was charged with those guns, and pled guilty to those guns. So a conviction did result from the burglary or the theft of those weapons, of those guns.

App. 395–96 (emphasis added).

**6.** MR. HOOF: Your Honor, just one more point. Your Honor, there was never anything before the court regarding any ownership and nonpermission of the guns. No owner of any guns ever came before the court and testified. There were only these allegations and convictions about somebody else.

We repeatedly have held that under plain error review, " 'before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights; if all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.' " *United States v. Campbell,* 295 F.3d 398, 404 (3d Cir.2002) (quoting *Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (internal quotations and citations omitted)). In the absence of any relevant objection to the pre-sentence report, and finding no error on the part of the district court in relying on the factual determinations in the pre-sentence report, we hold that there was "plain error" affecting defendant's substantial rights. Therefore, we will affirm the court's application of a three level upward adjustment to the appellant's sentence.[7]

### III.

Smith's final contention is that the district court erred in failing to address an argument he raised during the sentencing hearing that "might be construed as a motion for downward departure." (Appellant's Br. At 29).

Smith argues that his prior conviction for simple assault constituted a misdemeanor under state law, and therefore, should not be treated as a predicate felony conviction for a crime of violence under U.S.S.G. § 2K2.1(a)(2). He maintains that the district court should have construed this objection as a motion for downward departure. Smith presents this argument now by arguing that his counsel "continued in a vein which [ended] in a request for the exercise of the district court's discretion." Appellant's Br. at 29. However, since the application of § 2K2.1(a)(2) is not subject to discretion, Smith contends that the district court erred in failing to recognize what "appears to have been" a request for a downward departure. He suggests that this is bolstered by the fact that his final

---

My client was never charged with any burglary, he was never charged with any theft.

THE COURT: We're not talking about charging counsel. We're talking about relevant conduct. It's a different standard altogether for the purposes of sentencing this afternoon.

It's by a preponderance of the evidence. There's clear evidence before this court that your client was involved in the taking of these firearms from the gentleman's home, and two of those weapons were found in his bedroom in this house. There were some found outside in the backyard, and the distance between the homes was relatively close.

His nephew was involved in the burglary with him, the entry into the home and the taking of these weapons. This Court finds that's relevant conduct..

In reference to the taking of other firearms ... [h]e reached behind the counter and he took the shopkeeper's Glock firearm, and then ran out of the store.

The shopkeeper wisely decided not to give chase because he had a loaded weapon in your clients hand. That's what led ultimately to the search and seizure of your client's bedroom and the finding of the guns that belonged to the victim of these other firearms being taken.

That is relevant conduct, facts that this court should take into consideration in imposing a sentence on your client, I don't thing that adds anything more to this case, and I don't think that it takes anything away from this case. Your client was involved in the crime that he was convicted of, a felon in possession of a number of firearms. (App.398–400).

7. We do not suggest that Smith's argument would be meritorious if defense counsel had properly raised it.

offense level in combination with his criminal history category of IV resulted in a guideline range which exceeded the statutory maximum for his offense.

Smith bases this argument on *United States v. Shoupe*, 35 F.3d 835, 836 (3d Cir.1994), wherein we held that where a defendant's career offender status leads to an enhancement of the defendant's criminal history and base offense level, a sentencing court may depart from both the criminal history category and the applicable offense level where they over-represent his criminal history and likelihood of recidivism. Smith concludes that because the district court sentenced the him "without ruling on his request for a downward departure," we are deprived of "knowing why the district court denied the requested departure." *United States v. Powell*, 269 F.3d 175, 179 (3d Cir.2001).

However, although district courts should do their best to construe all discernable motions for downward departure, neither *Powell* or *Shoupe* requires clairvoyance on the part of district courts. The record here does not allow us to conclude that the district court could fairly interpret defense counsel's argument about Smith's misdemeanor conviction as a motion for departure. Rather, Smith was making a legal argument about whether his prior misdemeanor conviction should be treated as a felony for purposes of determining his criminal history level under the guidelines. The district court appropriately rejected this argument because the offense exposed Smith to more than one year in prison. *See, United States v. Dorsey*, 174 F.3d 331, 332 (3d Cir.1999).[8]

**8.** Moreover, it is obvious from the factual background of this case that substantial evidence linked him to the burglary of the Sample residence, and the theft of the Glock from

IV.

Accordingly, for all the reasons set forth, we will affirm the district court's judgment of conviction and sentence.

Moses' store. Therefore, there is no merit to the suggestion that Smith's criminal record was overstated.