William A. LUSTER, Plaintiff–Appellant,

v.

**CITY OF GALLATIN and Tom Murray, Defendants–Appellees.**

No. 01–5509.

United States Court of Appeals, Sixth Circuit.

Oct. 24, 2002.

Before MERRITT, SILER, and DAUGHTREY, Circuit Judges.

MERRITT, Circuit Judge.

This case involves a suit by William Luster against the City of Gallatin, Tennessee, and Tom Murray, individually, under 42 U.S.C. § 1983. Although in the court below, Luster appeared to raise claims based on the Fifth Amendment and on procedural due process, the only issue he raises on appeal is whether the district court erred in granting summary judgment to the defendants on his Fourth Amendment claim. In that claim, Luster asserts that the City used "excessive force" in the seizure of his property and improperly seized items outside the scope of a court order. Because we find that Luster did not create a genuine issue with respect to the reasonableness of the seizure, we affirm the district court's grant of summary judgment in favor of the defendants. The record before us demonstrates that the City and its agents acted with restraint, even bent over backwards to follow the law, in cleaning up a property in clear violation of the City's environmental ordinances.

Luster is the owner and operator of a commercial business known as Luster Motors, which is within the city limits of Gallatin. In October 1995, the City sued Luster to force him to bring his property into compliance with the city ordinance governing the safe maintenance of business premises. On November 4, 1996, the Sumner County Circuit Court issued a mandatory permanent injunction requiring Luster to perform certain tasks at his property within sixty days.

On July 11, 1997, the City filed a petition for contempt, asserting that Luster failed to comply with the court's 1996 injunction. At a hearing on August 11, 1997, the court found that Luster had failed to comply with the order and held him in contempt. .The court granted Luster fourteen days to purge himself of contempt. At a hearing on August 25, 1997, the court found that Luster had not purged himself of contempt and entered an order to that effect on September 19, 1997. As a result, the court authorized the City to take several steps, including removing stripped or dismantled motor vehicle frames from the premises and storing motor vehicle parts inside a building on the premises. Luster did not appeal this order, but it was not enforced until 1999, when the actions giving rise to this case were taken.

In December 1998, the City Council made Tom Murray, the City's Public Works Director, responsible for enforcing the 1997 order. After an inspection of Luster's property in March 1999, Murray reported that Luster's property still did not comply with the court's injunction. Before proceeding further, the City Council directed the city attorney to seek a clarification from the Sumner County Circuit Court regarding the meaning of the phrase "stripped or dismantled motor vehicle frames" used in the order. On April 26, 1999, the Court entered an order indicating that it intended for the phrase to encompass the definition of "abandoned vehicles" in the City's ordinances.

On June 28, 1999, Murray arrived at Luster's property with police officers, mechanics, and employees of an auto salvage

company retained by the City. The mechanics tested the vehicles and created a list, recording each vehicle found on the property and noting whether the vehicle was found to be abandoned within the meaning of the City ordinance. The parties dispute the nature of the inspections and the removal of the vehicles.

On June 30, 1999, Luster filed a complaint in Sumner County Chancery Court seeking injunctive relief and a temporary restraining order. The City ceased its actions while the request was pending. When the court denied Luster's motion for a temporary restraining order later that same day, the City resumed its efforts. Luster then went to his property and requested that all vehicles deemed by the City to be abandoned be moved to the rear of his property outside the city limits rather than a salvage yard. The City agreed to this request and relocated fifty-six vehicles over the next several days.

Luster filed this suit alleging numerous violations of 42 U.S.C. § 1983 based on the City's actions in seizing his personal property. Luster appeals the district court's grant of summary judgment for the defendants on his claims that the City used excessive force in the seizure of his property and that the City conducted an improper seizure of his property by removing or relocating items outside the scope of the state court order.

To state a claim under 42 U.S.C. § 1983, a plaintiff must prove that the defendant, while acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. *See Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). In this case, Luster claims that the defendants infringed his rights under the Fourth Amendment, which provides in pertinent part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. This right applies with equal force in both the civil and criminal contexts. *See Camara v. Municipal Court*, 387 U.S. 523, 539, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

In *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), the Supreme Court explained that a seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Id.* In order to be actionable, however, a seizure of property must be objectively unreasonable. *See Soldal v. Cook Co.*, 506 U.S. 56, 71, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (noting that " 'reasonableness is still the ultimate standard' under the Fourth Amendment").

The *Soldal* case is instructive on the standard to be used in evaluating the reasonableness of state seizures of property. In *Soldal*, the owner of a mobile home park sought to evict a delinquent tenant. In Illinois, a tenant may not be evicted without a judgment of eviction. Terrace Properties, the landowner, filed an eviction proceeding in state court but decided to evict the Soldals forcibly two weeks prior to the scheduled eviction hearing. Terrace notified the Sheriff's Department that it was going to remove the trailer home from the park and requested the presence of sheriff deputies in the event of any difficulties. Throughout a lengthy process of disconnecting the trailer from utilities and attaching it to a tractor to be removed, the deputies knew that Terrace did not have an eviction order.

When a state judge examined the case, he ruled that the eviction had been unauthorized and ordered Terrace to return the home to the lot. The home had been severely damaged and the Soldals brought suit under 42 U.S.C. § 1983, alleging a

violation of their Fourth Amendment rights.

The Seventh Circuit, *en banc*, held that the removal of the trailer did not constitute a seizure within the meaning of the Fourth Amendment. The Supreme Court reversed, noting that a seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Id.* at 61 (citing *Jacobsen*, 466 U.S. at 113).

In its decision, the *Soldal* Court dismissed concerns that its conclusion invited new liability for states and municipalities. *Id.* at 71. Rather, because reasonableness is the ultimate standard, numerous seizures of the type in *Soldal* would survive constitutional scrutiny. *See id.* A determination of reasonableness requires a "careful balancing of governmental and private interests." *Id.* (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 341, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)). Importantly, the Court noted that if the officers in *Soldal* had been acting pursuant to a court order, the "showing of unreasonableness would be laborious indeed." *Id.*

With those standards in mind, we turn now to whether the defendants' actions were objectively reasonable under the circumstances of this case. Because the defendants entered Luster's property to enforce a valid order from the Sumner County Circuit Court, we note that Luster's burden in demonstrating the unreasonableness of defendants' actions is substantial. *See id.* at 71.

An examination of the circumstances of the enforcement of the court order reveals that City personnel, including Murray, moved deliberately and offered Luster ample opportunity to comply voluntarily with the terms of the order. Prior to taking any action to enforce the court order, on January 28, 1999, Luster, Murray, and Gallatin Mayor Don Wright met at Wright's office to discuss the court order and its enforcement, as well as to schedule an inspection of Luster's property. Murray and a staff member inspected the property on February 8, 1999 and Murray subsequently reported his findings to the City Council on March 23, 1999. At that point, the City Council directed the city attorney to seek a clarification from the Sumner County Circuit Court regarding certain terminology in the court order. The court clarified its language in an order dated April 26, 1999.

On May 26, 1999, Murray telephoned Luster to discuss the court clarification of the standard to be used in determining which vehicles would be removed from the premises. Murray claims that he again telephoned Luster on June 22, 1999, to inform him that the City intended to begin its clean-up efforts the following week. Luster denies receiving that call, but he admits that on June 24, 1999, a neighbor informed him that the City would begin its work the next week. Murray claims that on June 28, 1999, he telephoned Luster to report that the City would begin its clean-up that day. Luster denies receiving that call as well. On June 28, 1999, City personnel, including Murray, police officers, mechanics, and employees of an auto salvage company, arrived at Luster's property to enforce the court's order. The mechanics tested the vehicles and created an inventory that included each vehicle and its status. When Luster filed a complaint in Sumner County Chancery Court seeking a temporary restraining order, the City ceased its efforts. When the court denied Luster's request that same day, Luster then went to his property to request that the City relocate the vehicles it determined to be abandoned to a location on the property outside the city limits. The City agreed to Luster's request.

After reviewing these efforts, we conclude that the City moved very deliberately and thoughtfully and went to great lengths to ensure compliance with the court's order. Furthermore, the defendants sought to accommodate Luster to the extent possible.

Turning now to Luster's specific allegations, Luster first alleges that a number of his vehicles were significantly damaged and that two motorcycles were destroyed in the seizure. The defendants were engaged in moving large numbers of vehicles which mechanics determined to be incapable of moving under their own power. We cannot find that moving those vehicles and other items believed to be scrap metal or other garbage on large flat-bed trucks was an objectively unreasonable method. It is not unreasonable that some damage might occur in that process as well.

In addition to the claims of damage, plaintiff claims that several items were seized outside the scope of the court order, including several unmounted tires, tools, sheet metal, and a garage door. Luster has provided no evidence other than his bare assertions that the defendants removed items outside the scope of the court order. Furthermore, several of these items were clearly within the scope of the court's order. For example, defendants were specifically authorized by the terms of the order to "[c]lear from the premises all outside trash, batteries which are not in vehicles and which are incapable of holding a charge, used unmounted tires, garbage, buckets, scrap materials, scrap metal, detached automotive parts and drums." In addition, the court's order, even after clarification, was relatively broadly written and required discretion by city officials to determine what items were included in it. Even if some items removed or relocated by defendants were eventually determined to be outside the scope of the court order, we cannot say that their inclusion was objectively unreasonable.

Because we conclude that Luster did not create a genuine issue with respect to the reasonableness of the seizure, it is not necessary to evaluate separately Murray's defense of qualified immunity or the City's liability under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The judgment of the district court is AFFIRMED.