RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0285p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

STELLA WHEELER,
        *Plaintiff-Appellant/Cross-Appellee,*

        *v.*

THE CITY OF LANSING; DENNIS WIRTH,
Individually,
        *Defendants-Appellees/Cross-Appellants.*

Nos. 10-1128/1160

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 08-00530—Paul Lewis Maloney, Chief District Judge.

Submitted: May 31, 2011

Decided and Filed: November 8, 2011

Before: BATCHELDER, Chief Judge; ROGERS and SUTTON, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** J. Nicholas Bostic, Lansing, Michigan, for Appellant. Mary Massaron Ross, PLUNKETT COONEY, Detroit, Michigan, for Appellees.

_____

## OPINION

_____

ROGERS, Circuit Judge. Plaintiff Stella Wheeler appeals the district court's grant of summary judgment for defendant, Officer Dennis Wirth, on her 42 U.S.C. § 1983 claim that he violated her constitutional rights in obtaining a search warrant for, and executing a no-knock search of, her apartment. Wheeler alleges that Wirth infringed on her Fourth Amendment rights by relying on a warrant that was not supported by probable cause as to some of the items to be seized and that failed to describe with

1

particularity some of the items to be seized.  The district court found that Wirth had violated the Fourth Amendment, but that he was entitled to qualified immunity because this violation would not have been apparent to the reasonable officer.  Wirth cross-appeals the district court's finding of a constitutional violation.

A reasonable officer would have believed that probable cause for the warrant existed and therefore the district court did not err in granting Wirth qualified immunity as to this aspect of Wheeler's Fourth Amendment claim.  We need not determine whether the warrant affidavit was sufficient to establish probable cause for the warrant in the first place; moreover, Wirth's cross-appeal, which raises that issue, must be dismissed because the district court ordered no relief adverse to Wirth.

However, because it would have been apparent to a reasonable officer that the warrant Wirth obtained lacked the required specificity in its description of the items to be seized, he is not entitled to qualified immunity from this aspect of Wheeler's Fourth Amendment claim.  The district court's grant of summary judgment in favor of Wirth must therefore be reversed in part.

I.

This suit revolves around the execution of a search warrant on Stella Wheeler's apartment in Lansing, Michigan, on January 31, 2008.  Officer Dennis Wirth from the City of Lansing Police Department and Officer Douglas Sharp from the Eaton County Sheriff's Department began working together in January 2008 to investigate a number of home invasions that had taken place in the City of Lansing (in Ingham County) and in Eaton County.[1]  As a result of these investigations, Wirth apprehended Tywone Brown, and Brown provided information in regard to two home invasions in Lansing in which he had been involved.  Brown identified Wheeler's boyfriend, Michael Adams, as a participant in these home invasions and told Wirth that property stolen during these

---

[1]Although Lansing, Michigan, falls mostly in Ingham County, portions of the city fall partially in Eaton County.  Wheeler's apartment was located in the Eaton County portion of Lansing.

home invasions was in Wheeler's apartment. Because Wheeler's apartment was located in Eaton County, Wirth employed Sharp's assistance in following this lead.

Wirth, Sharp, and Brown drove to Wheeler's apartment complex at Brown's direction, and while there Brown pointed out Wheeler's unit to the officers, explaining that it was where he had taken the stolen property. Wirth indicated that the address on the building was 1036 and the apartment number was 4; he also noticed a green-bladed snow shovel sitting in front of the apartment. Sharp recorded this information, and, after looking up and seeing a street sign, he wrote down the street name as Mapletree Court. Wirth and Sharp then dropped Brown off at a township substation in Eaton County and proceeded to the Eaton County prosecutor's office to obtain a search warrant for Wheeler's apartment.

In the meantime, Detective Daniel Prueter was conducting surveillance on the apartment complex in an attempt to locate a gold-colored Pontiac Grand Prix that had been connected to three of the home invasions in Eaton County. A witness to one of the home invasions had recorded the vehicle's license plate number, and the plate was registered to Wheeler. Wirth had previously contacted Wheeler to speak with her about the fact that her car had been seen during these invasions, but Wheeler denied any knowledge of wrongdoing. During his surveillance, Prueter spoke with the manager of Wheeler's apartment complex and learned that Wheeler lived at 1036. Prueter passed this information along to Wirth and Sharp before they headed to the prosecutor's office. In addition, after the complex manager told Prueter what Wheeler's address was, Prueter told the manager that officers were obtaining a warrant to search Wheeler's apartment and asked for a key to gain entry. The manager agreed to provide a key, and contacted a maintenance man to bring the key to Prueter.

Sharp and Wirth met with the assistant prosecutor, who typed up the affidavit requesting a warrant to search Wheeler's apartment. Both Sharp and Wirth provided the assistant prosecutor with information for the warrant affidavit, but only Sharp signed the affidavit. Wirth described the information given to the assistant prosecutor as follows:

> Conversation with the prosecutor with Eaton County, Detective Sharp provided her with his information reference to home invasions he had, and I provided her also with the information I had, specifically reference my home invasions, and Tywone Brown's statement to me pointing out the address, the drive-by, exactly what we were looking for, the people involved, and that's how she ended up getting the information to draw up the Affidavit there.

The warrant affidavit stated in a paragraph entitled "The PROPERTY to be searched for and seized, if found" that officers were looking for personal property, specifically listed in various categories and "taken in approximately nineteen home invasions." However, the paragraph entitled "The FACTS establishing probable cause or the grounds for the search" described only two home invasions, the two invasions in the City of Lansing to which Brown admitted being a participant. Despite this apparent discrepancy, Sharp and Wirth obtained a search warrant and returned to Wheeler's apartment, the unit Brown pointed out, with the warrant and a SWAT team.

After the SWAT team gained entry into Wheeler's apartment,[2] various other officers began searching the apartment and seizing certain items. The warrant listed the property to be "searched for and seized" as:

> Proof of ownership and/or occupancy, evidence of home invasions that have occurred in Eaton and Ingham counties in November 2007-January 2008, including but not limited to personal property (shotguns, long guns, computer and stereo equipment, cameras, DVD players, video game systems, big screen televisions, necklaces, rings, other jewelry, coin collections, music equipment, car stereo equipment) taken in approximately nineteen [sic: list ends abruptly]

Both Wirth and Sharp contend that they did not physically seize any of the personal property in the apartment, but Sharp does acknowledge that he filled out the "Return and Tabulation," listing the property seized by other officers. While logging this property, Sharp learned that the correct address for the residence was 1036 Endicott Court, not 1036 Mapletree Court as it was listed in the warrant. City of Lansing officers took the

---

[2]Though neither Wirth nor Sharp could see how the SWAT team entered the apartment, it appears that they entered with a key as there was no damage to the door and Wheeler testified that she had locked the door fifteen-to-thirty minutes before their entry.

confiscated property to the Lansing Police Department and logged it in the department's property room. According to the warrant return and the property room receipt, officers seized three cameras, a power adapter cord for a laptop computer, three gold bracelets, a gold chain, gold earrings, a gold ring, two watches (one Eddie Bauer and one Rolex), a radio, a laptop computer, a nineteen-inch television, a Playstation, a Gameboy, a video camera, a car stereo, silver certificates, an energy bill addressed to Stella Wheeler, and a bill addressed to Michael Adams.

This suit originated in state court. Wheeler filed a complaint against the City of Lansing, Officer Wirth, Officer Sharp, and Eaton County Sheriff Michael Raines in the Circuit Court for the County of Eaton, asserting Fourth Amendment violations and various state law claims. Upon the filing of a notice of removal by Sharp and Raines, the case was removed to federal court. In her amended complaint filed with the federal court below, Wheeler alleged the following violations of the Fourth Amendment: unlawful search and seizure through the execution of a search without a valid warrant; unlawful search and seizure through the inclusion and seizure of certain property in the warrant without supporting probable cause in the affidavit; unlawful seizure through the unreasonable destruction of certain property; and failure to train against Raines only.[3] Though Sharp and Raines were eventually dismissed from the suit with prejudice by stipulation of the parties, the City and Wirth (hereinafter referred to as defendants) continued in the litigation.

Defendants filed a motion for summary judgment. Defendants claimed that Wheeler's complaint failed to state a cause of action for a constitutional violation against the City because Wheeler did "not make any specific allegations with respect to the City of Lansing." Even if Wheeler had stated a cause of action against the City, the defendants argued that the warrant was valid. Defendants also asserted that Wirth was entitled to qualified immunity on Wheeler's constitutional claims. While Wheeler

---

[3]Wheeler also asserted various state law claims. After the court granted summary judgment in favor of defendants on all of Wheeler's federal claims, the court refused, within its discretion under 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over these remaining state law claims.

conceded that she had "never made a constitutional claim against Defendant City of Lansing," she contested the remainder of defendants' motion.

Wheeler filed a motion for summary judgment against Wirth solely on her claim that the warrant affidavit failed to establish probable cause to seize certain items listed in the warrant. Wheeler relied on the fact that the affidavit only described two of the home invasions at issue, and that only four categories of property were connected to those two home invasions, to establish that the affidavit was deficient and thus that the warrant was invalid and the search and seizure unconstitutional. Wheeler asserted that Wirth was not entitled to qualified immunity because "no reasonably trained and experienced officer would have relied on this warrant to authorize[] search and seizure of Plaintiff's property." In response, defendants asserted that Wirth was "entitled to qualified immunity because he did not seize any items, because he did not prepare or sign the affidavit, and because he was entitled to rely on the judgment of the prosecuting attorney who prepared the affidavit and warrant and the magistrate who issued the warrant."

The district court issued an order denying Wheeler's motion and granting defendants' motion. First, the district court dismissed all three constitutional claims against the City, as "none of these counts contain[ed] any specific allegations of actionable wrongdoing by the City," and Wheeler conceded as much in her reply to the defendants' motion. The district court then held that Wirth was entitled to qualified immunity as to all of Wheeler's Fourth Amendment claims. In regard to the error as to Wheeler's address, the district court held that it was not clearly established that such an error rendered the warrant invalid. Considering that there was only one building numbered 1036 in that apartment complex, other premises were not likely to be mistakenly searched and thus the warrant described the place to be searched with sufficient particularity. In regard to the affidavit's failure to provide factual support for probable cause as to some items listed as to be seized on the warrant, the district court held that it was not clearly established that this rendered the warrant invalid as to those items and thus a reasonable officer in Wirth's position would not have known it was

unconstitutional. The court explained that it "agree[d] with Wheeler that the affidavit prepared by the prosecuting attorney, signed by Detective Sharp, and issued by a state magistrate, failed to provide factual allegations sufficient to find probable cause that some of the categories of items ultimately seized were the fruits of crime." However, the district court found "no Sixth Circuit authority pre-January 30, 2008 *clearly* holding that a police officer may not rely on the judgment of both an attorney . . . and a judge . . . in a situation like this one." Finally, in regard to the alleged unconstitutional seizure by destruction, the district court held that Wheeler failed to produce any evidence to support that she suffered any more than de minimis damage to her apartment.

Wheeler now appeals this grant of summary judgment in favor of Wirth. In addition, Wirth cross-appeals the district court's determination that Wirth violated Wheeler's Fourth Amendment rights by seizing property without a valid warrant.

II.

Wheeler alleges that the warrant permitting the search of her apartment suffered from two defects: (1) the warrant affidavit failed to establish probable cause to seize certain items listed in the warrant, and (2) the warrant failed to describe with particularity some of the items to be seized, listing instead generalized categories of items despite the officers' knowledge of more details. Wirth is entitled to qualified immunity with respect to the first of these errors, but not the second. The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. Wheeler does not dispute that Wirth had probable cause to enter and *search* her apartment, but she disputes whether the warrant affidavit provided probable cause for the *seizure* of certain items included in the warrant and whether the warrant described the items to be seized with sufficient particularity. Thus, she alleges that the warrant was invalid, that the seizure of those items violated her Fourth Amendment rights, and that she is entitled to compensation pursuant to 42 U.S.C. § 1983. The district court properly rejected part of her claim, but summary judgment was not appropriate as to the other part.

*A. Wirth is entitled to qualified immunity as to Wheeler's claim regarding the alleged seizure of certain items without probable cause.*

Because a reasonable officer would have believed that there was probable cause to seize all of the items listed in the warrant, Wirth is entitled to qualified immunity as to this aspect of Wheeler's Fourth Amendment claim. The warrant to search Wheeler's apartment listed fourteen categories of items to be searched for and seized, but Wheeler argues that only four of those fourteen categories were sufficiently supported by the warrant affidavit. In listing the facts establishing probable cause, the warrant affidavit only referred to information gathered in regard to two of the burglaries being investigated by Wirth and Sharp. This is because, in seeking the warrant, Wirth and Sharp were relying mainly on the admissions of Tywone Brown, and he only claimed to have been involved in two home invasions, both of which he alleged took place in the City of Lansing on January 22, 2008. The warrant affidavit accordingly referred only to items allegedly taken in those robberies, which included televisions, a digital camera, game systems, and cash. However, the warrant described the following as the items to be searched for and seized: proof of ownership and/or occupancy; and evidence of home invasions, including shotguns, long guns, computer and stereo equipment, cameras, DVD players, video game systems, big screen televisions, necklaces, rings, other jewelry, coin collections, music equipment, and car stereo equipment.

Wheeler contends that this disparity between the warrant affidavit and the warrant led to the inclusion of items in the warrant without the requisite probable cause, but Wirth is entitled to qualified immunity even if there was a constitutional violation. Fourth Amendment jurisprudence provides that an affidavit "must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996). "From whatever source, the information presented must be sufficient to allow the official to independently determine cause; 'his action cannot be a mere ratification of the bare conclusions of others.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). However, "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In order to determine whether an officer is entitled to qualified immunity, we must look at the objective reasonableness of the officer's conduct in relation to clearly established law. *Id.* An officer is not entitled to this immunity when

> the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred[;] . . . the violation involved a clearly established constitutional right of which a reasonable person would have known[; and] . . . the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)). But we need not determine each of these elements in that order, as we can hold that an official is entitled to qualified immunity without determining whether a constitutional violation has actually occurred. *Pearson v. Callahan*, 555 U.S. 223, 236-42 (2009). This is exactly what we do here.

Even assuming that Wirth violated Wheeler's Fourth Amendment rights, Wheeler has not shown that it was a clearly established violation for Wirth to rely on the warrant issued to search Wheeler's apartment. For a right to be a clearly established right of which a reasonable person would have known, "[t]he contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has been previously held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (citation omitted). Fourth Amendment jurisprudence makes clear that a warrant must be supported by probable cause, which is usually laid out in the warrant affidavit. *See, e.g.*, *Whiteley v. Warden*, 401 U.S. 560, 564 (1971). Further, we can assume for the sake of this qualified-immunity analysis that Wheeler's Fourth Amendment rights were violated when officers seized items that were identified in the warrant but not supported by probable cause in the warrant affidavit. *See Pearson*, 555 U.S. at 236. Regardless, such a deficiency is

unusual, and thus it was reasonable for Wirth to fail to recognize it, especially considering the fact that the warrant affidavit and the warrant were drafted by a prosecuting attorney and that the warrant was approved by the state magistrate. Much of the problem Wheeler alleges here is not with the warrant, but with the warrant affidavit. Moreover, unlike in most cases dealing with a defective warrant affidavit, this affidavit is clearly not deficient in establishing probable cause to *search*, and Wheeler acknowledges that the affidavit obviously provides such probable cause. Instead, the deficiency alleged is in establishing probable cause to *seize* certain items listed in the warrant, an error that would not be apparent to the reasonable police officer.

The fact that officers can seize items not listed in a warrant also makes Wirth's reliance on the allegedly defective warrant in this case reasonable. We have held that "even evidence 'not described in a search warrant may be seized if it is reasonably related to the offense which formed the basis for the search warrant.'" *United States v. Brown*, 49 F.3d 1162, 1169 (6th Cir. 1995) (quoting *United States v. Fortenberry*, 860 F.2d 628, 636 (5th Cir. 1988)). Thus, if something "constitute[s] evidence of the commission of a criminal offense and was an instrumentality of a crime[,] [i]t [can] be seized although not specifically listed in the search warrant." *United States v. Korman*, 614 F.2d 541, 547 (6th Cir. 1980) (citing *United States v. Alloway*, 397 F.2d 110-11 (6th Cir. 1968)). Though the situation here is somewhat different—that is, Wheeler alleges not that the officers were seizing items that were not in the warrant, but instead that they were seizing items that were included in the warrant without a proper foundation for their seizure being laid in the affidavit—this ability to seize items not even included in the warrant makes it more reasonable for Wirth to believe that he could seize items identified in the warrant, even if the warrant affidavit failed to properly support their seizure. The basis for the warrant, in Wirth's view, was the commission of the home invasions in both Ingham County and Eaton County. Thus, it was reasonable for him to believe that, as long as the search warrant established probable cause for the search, which it clearly did, he could seize any items he encountered that constituted evidence of the commission of the home invasions, which stolen property clearly does. Wirth is

thus entitled to qualified immunity from this aspect of Wheeler's Fourth Amendment claim.

Even though Wirth urges us to determine whether the warrant affidavit failed to establish probable cause for the seizure of certain items in the warrant, we need not do so for purposes of granting qualified immunity and do not have jurisdiction to do so for purposes of Wirth's cross-appeal. In his cross-appeal, Wirth challenges the district court's determination that Wirth violated Wheeler's Fourth Amendment rights, even though the district court ultimately held that he was immune from suit pursuant to this violation. Because Wirth was ultimately successful in his motion for summary judgment, we lack jurisdiction to consider this cross appeal.

There is generally no appellate jurisdiction when the appellant does not seek a change in the relief ordered by the judgment appealed from. For instance, we stated in *ASARCO, Inc. v. Sec'y of Labor*, 206 F.3d 720, 722 (6th Cir. 2000), that "a prevailing party cannot appeal an unfavorable aspect of a decision in its favor," and that "[a]ppellate courts review judgments, not statements in an opinion." We acknowledge the Supreme Court's recent holding in *Camreta v. Greene*, 131 S.Ct. 2020, 2032 (2011), that the Supreme Court has jurisdiction to review a lower court's holding that a party violated the Constitution even though the party prevailed on qualified immunity grounds in the lower court. The Court based this conclusion on the fact that the lower court's ruling would be considered to settle a question of constitutional law and thereby guide the conduct of officials in the future. *Id.* The "purpose and effect" of such a ruling, the Supreme Court reasoned, permits its being reviewed at the behest of the prevailing immunized official. *Id.*

The Court emphasized in *Camreta*, however, that its holding "addresse[d] only [the Supreme Court's] authority to review cases in this procedural posture." *Id.* at 2033. It did not address whether lower courts of appeals must hear appeals brought by similarly prevailing parties. Moreover, the Court recognized that "the considerations persuading [it] to permit review of petitions in this posture may not have the same force as applied to a district court decision," because such decisions by a district court are not binding

precedent in any future matters. *Id.* at n.7. In light of this difference, at least one court of appeals has noted that prevailing immunized parties cannot appeal a district court's "newly declared constitutional right in the higher courts." *Horne v. Coughlin*, 191 F.3d 244, 247 (2d Cir. 1999); *but see Kalka v. Hawk*, 215 F.3d 90, 96 (D.C. Cir. 2000) (assuming that when plaintiffs in *Bivens* cases appeal adverse immunity rulings, "the winning officials can cross-appeal the ruling against them regarding the constitutionality of their actions").

Permitting review of a prevailing party's claim creates tension with Article III's prohibition against issuing advisory opinions. *See, e.g.*, *Herb v. Pitcairn*, 324 U.S. 117, 126 (1945). This is because the prevailing party has already obtained a judgment in his or her favor, and thus is not asking the court to review the lower court's judgment on appeal but instead a basis or reason for that judgment. "The duty of this court . . . is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Mills v. Green*, 159 U.S. 651, 653 (1895). This consideration, and the fact that the district court's decision below does not present the sort of concern with the creation of precedent that the Supreme Court confronted in *Camreta*, lead to the conclusion that we are without jurisdiction to review Wirth's cross-appeal. Further, as explained above, we need not determine on Wheeler's appeal whether the warrant affidavit failed to establish probable cause for the seizure of certain items in the warrant in order to hold that Wirth is entitled to qualified immunity. Thus, we state no opinion as to whether a constitutional violation occurred from the execution of the warrant with respect to items not identified as stolen in the crime descriptions supporting the existence of probable cause.

*B. Wirth is not entitled to qualified immunity as to Wheeler's claim that the warrant failed to describe the items to be seized with sufficient particularity.*

The district court however did err in granting qualified immunity as to the second aspect of Wheeler's Fourth Amendment claim, in which she alleges that the warrant was constitutionally deficient because it failed to describe with particularity some of the items to be seized. Wheeler claims that Wirth had a "wealth of information available to

him concerning the particulars of the stolen property," but that the affidavit and warrant only listed broad categories of property to be seized. As an example, Wheeler notes that "[f]or the two incidents in the affidavit, [Wirth] had the brand and dimensions of the televisions, the brand of the camera and Playstation and the exact amount of cash reported as stolen," but the warrant merely lists the items to be seized as cameras, video game systems, big screen televisions, and coin collections. The district court mentioned Wheeler's argument on this point, noting Wheeler's response to Wirth's motion for summary judgment on the "unconstitutional search due to the warrant's failure to describe with particularity the items to be seized" claim. However, the district court appears to have folded this argument into Wheeler's argument that the warrant affidavit failed to establish probable cause as to some of the items listed as to be seized in the warrant, as the court ultimately held only that "the affidavit . . . failed to provide factual allegations sufficient to find probable cause that some categories of items ultimately seized were fruits of crime." Thus, the district court did not specifically address, in reaching its conclusion that Wirth was entitled to qualified immunity, whether the warrant described with sufficient particularity all of the items to be seized.

The warrant's description of some of the items to be seized was in fact overbroad. Although we refused to address whether Wheeler's first Fourth Amendment claim actually presented a constitutional violation, we must address the constitutionality of her second claim in order to determine whether Wirth is entitled to qualified immunity. This court has stressed the particularity requirement by noting that "[g]eneral warrants that fail to describe with particularity the things to be searched for and seized 'create a danger of unlimited discretion in the executing officer's determination of what is subject to seizure and a danger that items will be seized when the warrant refers to other items.'" *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988) (quoting *United States v. Savoca*, 761 F.2d 292, 298-99 (6th Cir. 1985)). "[T]he degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought," making "a description . . . valid if it is as specific as the circumstances and nature of the activity under investigation permit." *Id.* at 1383 (quoting *United States v. Blum*, 753 F.2d 999, 1001 (11th Cir. 1985) (internal quotation

marks omitted)).  However, we have noted that "a warrant referring to stolen property of a certain type is insufficient if that property is common." *United States v. Campbell*, 256 F.3d 381, 388-89 (6th Cir. 2001).

The warrant to search Wheeler's apartment listed broad categories of stolen property, providing no basis to distinguish the stolen items from Wheeler's own personal property.  Moreover, it appears that officers had additional information about the stolen items to be seized that they could have included in the warrant.  For example, the warrant referred to one category of items to be seized as "cameras," yet the police reports describe the types of cameras stolen in the home invasions by brand.  In fact, two of the cameras taken in the search were Kodak cameras, even though none of the reports listed a Kodak-brand camera as stolen.  Cameras are "common" property that greater detail, when available as it was here, should be used to identify.  Additional information likely could have further particularized the descriptions of other categories of items to be seized, including computer and stereo equipment, video game systems, big screen televisions, music equipment, and car stereo equipment.  Wirth argues that requiring further specificity in this case would "require individuals to go beyond what is reasonable and include every single fact known in the affidavit."  But we do not require such detail.  Instead, we simply require additional details, if they are available, to help distinguish between contraband and legally possessed property.

Wirth argues that even if the warrant was deficient, he cannot be liable for this constitutional violation as he did not seize any items and he was not the affiant.  This argument lacks merit.  Wirth cites *Malley v. Briggs*, 475 U.S. 335 (1986), to support his contention that he should not be liable since he was not the affiant.  However, that case merely held that officers could be entitled to qualified immunity (but not absolute immunity) from liability under § 1983 when applying for an arrest or search warrant, and that in determining if they are entitled to qualified immunity, officers should be held to the same objective reasonableness standard applied with respect to the *Leon* good-faith exception in suppression hearings.  *Id.* at 344-45.  *Malley* did not limit liability to the person actually signing the warrant affidavit, and there would be little sense to such a

limit. The Fifth Circuit has held that "liability under *Malley* may lie not only against the affiant, but also against an officer . . . who actually prepares the warrant application with knowledge that a warrant would be based solely on the document prepared," as "[s]uch an officer is in a position to see the whole picture, to understand his responsibility, and thus fully to assess probable cause questions." *Michalik v. Hermann*, 422 F.3d 252, 261 (5th Cir. 2005). It appears that Wirth and Sharp were the sole officers responsible for the investigations that led up to the search of Wheeler's apartment.[4] Moreover, both Wirth and Sharp spoke to the prosecuting attorney, giving her the information that they both knew would form the basis of the warrant affidavit and obtaining the search warrant with this affidavit. Thus, Wirth played a major role in preparing the affidavit and procuring the warrant and should be held responsible for the subsequent seizure of items pursuant to that warrant, whether or not he actually signed the affidavit and whether or not he actually seized any of the property.

Wirth is not entitled to qualified immunity from this aspect of Wheeler's claim, as it would be apparent to a reasonable officer that listing general categories of items to be seized even though further details are available violates the Fourth Amendment's specificity requirement. *Campbell* makes clear that when dealing with common items that can be possessed legally, like all of the property included in the warrant to search Wheeler's apartment, specificity is especially important. 256 F.3d at 388-89. It appears that Wirth could have described the stolen items that he and Sharp hoped to uncover with greater specificity because the victims of the home invasions had gone into detail in describing the missing items and these details were recorded in the various police reports. In *United States v. Blakeney*, 942 F.2d 1001, 1026 (6th Cir. 1991), we held that a search warrant was overbroad when it described stolen jewelry to be searched for and seized as merely "jewelry" even though an inventory of the particular items taken was available to the official applying for the warrant. Here, the items to be searched for and seized included many common household items that one could expect to find in a person's apartment, necessitating greater specificity in order to distinguish the stolen

---

[4]Although Prueter helped by performing surveillance of the apartment complex, he was merely assisting in the investigation and was not one of the main officers assigned to the case.

items from the items belonging to the resident.  Considering this along with the clearly articulated standards from *Henson* and *Campbell*, it should have been apparent to Wirth that the warrant's description was not specific enough to satisfy the Fourth Amendment. Because a reasonable officer would have known that the warrant was deficient, Wirth is not entitled to qualified immunity on this portion of Wheeler's Fourth Amendment claim.  Granting summary judgment in favor of Wirth on this aspect of Wheeler's complaint was thus not appropriate.

### III.

For these reasons, we affirm the district court's ruling in part, reverse in part, and remand for further proceedings consistent with this opinion.