NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0051n.06

No. 14-3266

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 15, 2015
DEBORAH S. HUNT, Clerk

JOSEPH V. LIBRETTI, JR.,

      Plaintiff-Appellant,

v.

STEVEN WOODSON,

      Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

BEFORE:    SILER, CLAY, and GRIFFIN, Circuit Judges.

**CLAY, Circuit Judge.**  Plaintiff Joseph V. Libretti appeals the district court decision dismissing his Fourth Amendment claims on the basis of qualified immunity. At issue is whether Defendant Steven Woodson, an agent of the Drug Enforcement Agency ("DEA"),[1] violated Libretti's clearly established constitutional rights. Libretti's claims are threefold: that certain items seized from within his home were not specified by Woodson's search warrant; that Woodson failed to seasonably return those item once they were determined not to be evidence of any crime; and that there was no probable cause to search his safe deposit box. The district court found that Woodson was entitled to qualified immunity with respect to all claims. For the reasons that follow, we **AFFIRM** the judgment of the district court.

---

[1] Woodson is now retired.

## BACKGROUND

I.    **Factual Background**

Special Agent Woodson joined the DEA in 1992, following six years with the Wyoming Division of Criminal Investigation. Woodson worked "almost exclusively on narcotics and money laundering violations," throughout his employment with both agencies. (R. 29-2, Search Warrant, PageID # 423.) In 2010, Woodson was investigating the trafficking of methamphetamine within the State of Wyoming. Libretti became a target of this investigation when his name appeared in connection with two individuals who were planning to transport 200 grams of methamphetamine into the state from Phoenix, Arizona. Woodson was already familiar with Libretti as having a history of drug trafficking when he discovered this connection in 2010.[2]

The DEA secured the drug-traffickers' plans with the use of court-authorized telephone intercepts. On May 21, 2010, the two individuals trafficking methamphetamine left Phoenix for Wyoming and were stopped by the DEA en route to their destination. Woodson learned, after the fact, that Libretti had sought leave and was granted permission from his probation officer to travel to Phoenix at that same time. Libretti was implicated in the transaction by the individuals detained as a result of the stop by the DEA. The court-authorized intercepts also revealed that Libretti was selling "spice."[3]

---

[2] In 1992, Libretti pled guilty to running a Continuing Criminal Enterprise following a drug trafficking investigation by the Wyoming Division of Criminal Investigation. Libretti was sentenced to a 20 year sentence in federal prison for that conviction.

[3] Spice is a brand name of "herbal incense" that is commonly used to refer to all synthetic cannabis products. *See* Roland Macher, et al., *Synthetic Marijuana*, FED. BUREAU OF INVESTIGATIONS (May 2012), http://www.fbi.gov/stats-services/publications/law-enforcement-bulletin/may-2012/synthetic-marijuana. These products are often composed of a variety of legal herbs that have been sprayed with chemicals that mirror the effects of the psychoactive ingredient in marijuana when smoked. *Id.* By the time of the search at issue, the DEA had temporarily placed five of those chemicals on the list of Controlled Substances. *Id.*

On June 2, 2010, the DEA searched Libretti's Wyoming home. The search uncovered spice, as well as currency that had been concealed within the heating ducts of Libretti's home. On March 18, 2011, Libretti was indicted by a Wyoming federal grand jury for conspiring to possess with the intent to distribute fifty grams or more of methamphetamine between January 2010 and March 13, 2011.

Libretti moved to Ohio just prior to the indictment. Woodson subsequently applied for a warrant to search Libretti's Ohio home and safe deposit box in support of the ongoing investigation. The DEA's search of Libretti's Ohio home resulted in the seizure of a number of documents and computer storage devices, as well as some legal herbs, then suspected to be spice. The bases for this warrant were the information Woodson had obtained during the 2010 investigation and knowledge from prior investigations that Libretti regularly made use of safe deposit boxes to hide the proceeds of his operations. Notably, Libretti's bank records indicated that he accessed his Wyoming safe deposit box on the same day that the DEA searched his Wyoming home. That box was subsequently closed.

The seized property was turned over to the prosecution for Libretti's criminal trial in the Wyoming district court. Libretti was acquitted on that charge. The court ordered that his property be returned—though Libretti disputes that the government has fully complied. Libretti contends that the search of his Ohio home violated his Fourth Amendment rights. He initiated this suit pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), to recover civil damages for the alleged violation of his constitutional rights.

## II.    Procedural History

Libretti filed his complaint on March 28, 2013, in the Cuyahoga County Court of Common Pleas.  The complaint contained one count, which alleged that Woodson (a) made material misstatements and omissions in his application for the search warrant, and (b) seized items not described by the warrant when executing the subsequent search.  The complaint was amended on April 12, 2013, to name Woodson in his individual capacity.  On April 25, 2013, Woodson removed the case to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1442(a)(1).  The pre-amended complaint was removed to the district court docket.

Libretti sought leave from the district court to file a second amended complaint on May 15, 2013.  The amended complaint would include a Fifth Amendment Takings Clause claim against the United States for property seized in the search.  The district court denied his motion for leave because the property in question was the subject of ongoing litigation in a district court in Wyoming.  Libretti thereafter sought leave to file a third amended complaint, arguing that the federal court in Wyoming was incapable of affording adequate relief.  The district court denied leave a second time, again citing the need to avoid presiding over a matter which was already the subject of ongoing litigation in another federal court.  The district court did, however, stay the proceedings to await the outcome of the Wyoming litigation.

While the proceedings were stayed, Woodson filed a motion to substitute the United States as the party-defendant because the complaint which was removed to the federal docket failed to name him in his individual capacity.  He alternatively moved for dismissal on the basis of qualified immunity.  Libretti responded by filing a fourth amended complaint, along with a

response in opposition to the motion to dismiss. The district court struck the four proceeding documents, lifted the stay, and ordered Libretti to file an amended complaint naming Woodson in his individual capacity—thereby fixing the error that had occurred at the removal stage.

Libretti filed a fifth amended complaint, at which point Woodson filed another motion to dismiss on the basis of qualified immunity. Libretti then moved for leave to file yet another amended complaint, his sixth. The district court simultaneously denied the motion to amend and granted Woodson's motion to dismiss the fifth amended complaint based on the affirmative defense of qualified immunity.

Libretti filed a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e). This motion was denied. Libretti filed a timely appeal from the order dismissing his fifth amended complaint and from the order denying his motion to amend or alter the judgment. He also contends that the district court abused its discretion in not granting leave to file his second, third, fourth, and sixth amended complaints.

## DISCUSSION

### I.     Fourth Amendment Claims

Libretti asserts three distinct challenges to the district court's ruling regarding the alleged violation of his Fourth Amendment rights. First, Libretti argues that Woodson exceeded the scope of the search warrant by seizing items not listed therein. Second, he argues that the district court erred in holding that the complaint failed to allege sufficient facts to support a claim against Woodson for the government's failure to seasonably return his property. Third, Libretti argues that the district court erred by finding probable cause to search his safe deposit box.

We find that Woodson is entitled to qualified immunity with respect to each of these claims.

## A.    Standard of Review

We review *de novo* a motion pursuant to Fed. R. Civ. P. 12(b)(6)—"failure to state a claim upon which relief can be granted." *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). Qualified immunity is also reviewed *de novo*, *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011), and the plaintiff bears the burden of proof to establish that a defendant is not entitled to its protection from civil lawsuits. *Davenport v. Causey*, 521 F.3d 544, 550 (6th Cir. 2008). Qualified immunity for government actors applies to the performance of all discretionary functions, "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

To defeat qualified immunity and succeed on a *Bivens* claim, a plaintiff must demonstrate that a federal official defendant (being sued in his individual capacity) infringed upon the plaintiff's clearly established constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009); *Ctr. for Bio-Ethic Reform, Inc. v. Napolitano*, 648 F.3d 365, 370 (6th Cir. 2011). Rights are not clearly established "unless either a precedent 'squarely governs' the outcome of the case or the case is [entirely] 'obvious.'" *Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco and Firearms*, 452 F.3d 433, 447 (6th Cir. 2006) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199–201 (2004)). In the Fourth Amendment context, this inquiry turns on whether the government-defendant acted reasonably under the circumstances. *United States v. Ramirez*, 523 U.S. 65, 71 (1998) ("The general touchstone of reasonableness . . . governs the method of execution of the warrant.").

### B.     Analysis

#### 1.     Seizure of the Suspected "Spice"

Libretti contends that his Fourth Amendment rights were violated when the DEA seized his legal herbs.  Woodson, at the time, suspected that the herbs were illegal spice.  Typically, the government may not seize property unless it has been particularly described within a search warrant; however, "the degree of specificity required [within a warrant] is flexible and will vary depending on the crime involved and the types of items sought."  *United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988).  Furthermore, items that are "reasonably related to the offense which formed the basis for the search warrant" may also be seized.  *Wheeler v. City of Lansing*, 660 F.3d 931, 939 (6th Cir. 2011) (internal quotation marks omitted).  Thus, any seizure of property must be "objectively unreasonable" before a plaintiff can overcome qualified immunity.  *Luster v. City of Gallatin*, 50 F. App'x 189, 191 (6th Cir. 2002).

Libretti argues that "the warrant did not authorize the seizure of legal herbs, or any substance for that matter."  *Appellant's Br.* at 32.  One of the charges underlying the search warrant, however, was "Possession with Intent to Distribute [a] Controlled Substance."  (*Id.* at PageID # 416.)  At the time of the search, spice was a Schedule I Controlled Substance.  It is unquestionable that spice is reasonably related to the crime of Possession with Intent to Distribute.  That Libretti's criminal indictment pertained to methamphetamine (and not spice) is of no consequence.  It is also unavailing that Woodson incorrectly identified the legal herbs as illegal spice. *Cf. United States v. Taylor*, 248 F.3d 506, 512 (6th Cir. 2001) (holding that officers were justified in seizing a marijuana stem, even though, as they later discovered, it was from the mature stalk, and therefore not illegal).  It is impossible to distinguish, with the naked eye, between legal herbs and those that have been chemically altered.  Woodson was aware that

Libretti was selling spice, and spice had been found at Libretti's Wyoming home. Under these circumstances, it was not "objectively unreasonable" for Woodson to seize Libretti's herbs. Thus, Woodson is entitled to qualified immunity with respect to this seizure.

Libretti also contends that the seizure of certain documents violated his Fourth Amendment rights. The warrant, however, specifically authorized the seizure of documents and records that may be evidence of Libretti's criminal activities. Libretti's argument that the documents seized were not obviously evidence of any crime is without merit. Because the items seized in the search of Libretti's Ohio home were either authorized by the warrant or reasonably related to the underlying charge, Woodson is entitled to qualified immunity.

### 2. Retention of Property

Libretti also seeks damages for Woodson's alleged failure to return property that the DEA subsequently determined was not evidence of any crime. This claim necessarily fails due to Libretti's insufficient allegations. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution" to successfully establish a *Bivens* claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Libretti's fifth amended complaint does not allege that Woodson retained control of, or had authority to return, any of the seized property. For this reason alone, Woodson is entitled to qualified immunity with respect to this claim.

### 3.    Search of the Safe Deposit Box[4]

Libretti argues that Woodson did not have probable cause to search his safe deposit box. Probable cause exists when the sworn facts of an affidavit establish "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Frazier*, 423 F.3d. 526, 531 (6th Cir. 2005) (internal quotation marks omitted). This fair probability arises from "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Padro*, 52 F.3d 120, 122–23 (6th Cir. 1995) (internal quotation marks omitted). Probable cause is not determined by formula; instead, we take a practical approach. *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006). Therefore, we look to the totality of circumstances in deciding whether a warrant is supported by probable cause. *United States v. Miggins*, 302 F.3d 384, 393 (6th Cir. 2002).

Evidence of drug trafficking activities uncovered during a previous search of an individual's home can provide probable cause to subsequently search a safe deposit box associated with the homeowner. *See United States v. Thomas*, 878 F.2d 383 (6th Cir. 1989) (per curiam). A recent indictment may also factor into the probable cause determination. *See United States v. Remble*, No. 1:05-CR-113-001, 2006 WL 462451, at *3 (S.D. Ohio Feb. 22, 2006).

---

[4] Woodson contends that Libretti has improperly raised this claim on appeal. This argument is absolutely without merit. At the district court, Libretti argued that "probable cause would not exist [to search his safe deposit box] if the search warrant affidavit had not contained false statements and stale information, and not omitted relevant information." (R. 34, Plaintiff's Br. in Opp. to the Mot. to Dismiss, PageID #515.) The district court considered the omissions, weighed the staleness, and accepted as true that Woodson made false statements, but concluded, even "absent the alleged misrepresentations, [that] there was still probable cause to believe that evidence of criminal activity would be located . . . in [Libretti's] safe deposit box." *Libretti v. Woodson*, No. 1:13CV932, 2013 WL 6634249, at *3 (N.D. Ohio, Dec. 17, 2013). On appeal, Libretti still contests probable cause, but reshapes his argument in light of the district court's analysis.

And, association with suspected and known drug traffickers is another appropriate consideration. *See United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991).

Woodson had substantial experience in drug trafficking investigations. He averred to knowledge that it was common for drug traffickers to store drug proceeds in safe deposit boxes. Woodson specifically noted that Libretti was known to "frequently [use] bank safety deposit boxes" throughout the 1980s and early 1990s, prior to his conviction for operating a criminal enterprise.[5] (R. 29-2, Search and Seizure Warrant, PageID # 419.) A search of Libretti's Wyoming home resulted in the seizure of spice and the discovery of currency hidden in the heating ducts. The day Libretti's Wyoming home was searched, he accessed a safe deposit box at his Wyoming bank. The account for the safe deposit box was subsequently closed. At the time Woodson obtained his search warrant, Libretti had just been indicted for his suspected involvement for the trafficking of methamphetamine. The indictment was based, in part, on Libretti's connections to and communications with the two individuals caught in the act of transporting methamphetamine from Phoenix to Wyoming. Considering these circumstances, in totality, probable cause existed to search Libretti's safe deposit box. Thus, Libretti's Fourth Amendment rights were not violated, and Woodson is entitled to qualified immunity.

## II.    Denial of Leave to Amend the Complaint

Libretti contends that the district court erred in denying him leave file second, third, fourth, and sixth amended complaints. We review these denials for abuse of discretion. *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002). Leave to amend should be freely granted, but is appropriately denied when there is a "'repeated failure to cure deficiencies by amendments

---

[5] Libretti argues that this information is mere gossip, but as noted by the district court, Libretti's criminal habits were detailed at length by the Supreme Court. *See Libretti v. United States*, 516 U.S. 29, 44–46 (1995).

previously allowed'" or when the changes made in the amended complaint are futile. *Id.* at 800 (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)). We find that the district court did not abuse its discretion in denying Libretti leave to file a second, third, fourth, or sixth amended complaint.

### A.    Second Amended Complaint

Libretti argues that he was entitled to file his second amended complaint as a matter of right. Notably, Libretti sought leave at the trial court and did not assert this right in the first instance. Libretti's first amendment was taken as a matter of right in the state court proceedings[6]; he was not entitled to take a second. The district court provided a sound explanation for why it chose to deny Libretti's request; stated simply, the court would not interject itself into matters that were then being litigated by another federal court. The district court did not abuse its discretion in denying leave, and any error related to the failure to remove the correct complaint was harmless.[7] *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (holding that a failure to grant leave amounting to an abuse of discretion is harmless error if the amendment would be futile).

### B.    Third Amended Complaint

Libretti objected to the district court's denial with respect to the second amended complaint. He explained, in support of his objection, why the Wyoming court could not offer adequate relief. The district court noted Libretti's concerns, but explained that judicial economy

---

[6] Pursuant to Ohio R. Civ. P. 15(A), "A party may amend its pleading once as a matter of course, within twenty-one days after serving it . . . ."

[7] Libretti did not attempt to amend as a matter of right at the district court proceedings until his fourth amended complaint. Presumably, the district court was made aware of the removal error at this point, after Woodson attempted to substitute the United States for himself as a party. The district court thereafter allowed Libretti to file an amended complaint that asserted his claims against Woodson (but not the United States) in his individual capacity.

would be better served by allowing the Wyoming litigation to run its course. Libretti ignored this response, and sought leave to file a third amended complaint, again seeking to assert a Takings Clause claim against the United States. The district court denied this motion and reiterated, for a third time, its reasons for denying the motion. Again, the district court did not abuse its discretion.

### C.      Fourth Amended Complaint

The district court thereafter granted Libretti's motion to stay the proceedings during the pendency of the Wyoming court's proceedings related to Libretti's seized property. During this time, Woodson filed a motion to substitute the United States as a party or alternatively dismiss on the basis of qualified immunity. Libretti responded by filing a fourth amended complaint asserting that he had an absolute right to file because he had not done so before. Instead of suing the United States, Libretti sought to assert his Takings Clause claims against government officials in Wyoming. The district court did not err in striking Libretti's complaint and allowing him to reassert his original claim against Woodson, in his individual capacity. There was no need for the district court to explain for a fourth time what it had already conveyed to Libretti at some length.

### D.      Sixth Amended Complaint

Woodson renewed his motion to dismiss on the basis of qualified immunity in response to the fifth amended complaint. Libretti again asserted an absolute right to amend his complaint. The district court did not provide a reason for denying the sixth motion to amend, but that does not amount to an abuse of discretion "[w]hen the reasons for denying a motion to amend are readily apparent." *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 425 (6th Cir. 2013). Libretti had ample opportunity with the fifth amended complaint to fix any deficiencies that

remained in his pleadings. Under these circumstances, where a dispositive motion was pending and Libretti had repeatedly attempted to make futile amendments, the district court did not abuse its discretion in denying leave.

## CONCLUSION

For the reasons stated in this opinion, we **AFFIRM** the judgment of the district court in full.